[No. A087430. First Dist., Div. Four. Mar. 27, 2000.]

JO KIM, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

**COUNSEL**

Dave Linn for Plaintiff and Appellant.

Gordon & Rees, Michael T. Lucey, Greta W. Schnetzler and Diane R. Crowley for Defendant and Respondent.

**OPINION**

**REARDON, J.**—This appeal comes to us from a judgment of dismissal following the sustaining of a demurrer without leave to amend on a third amended complaint for "wrongful termination and failure to pay overtime." We affirm the judgment.

## I. BACKGROUND

Under the established rule that we treat the demurrer as admitting all material facts properly pled but do not assume the truth of contentions, deductions or legal conclusions (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]), appellant Jo Kim's third amended complaint reveals the following: Kim was employed by respondent the Regents of the University of California (hereafter Regents or University), a public entity organized pursuant to the California Constitution, beginning November 1970. She agreed to work 40 hours a week with her best efforts in clerical, secretarial and administrative tasks for a specified rate of compensation. Her employment agreement provided "time and a half" payment for hours worked above 40 in any week, pursuant to state and federal law.

From 1981 onward, terms of employment were subject to collective bargaining agreements between the Regents and her union. Those agreements also provided for "time and a half" compensation above 40 hours.

Kim's performance was generally exemplary and she was promoted to principal clerk and eventually to administrative assistant. In late 1995 Charles Hill, as agent for Regents, "enticed" Kim to transfer laterally to the University Extension office. Hill promised that she would be "adequately trained" for the position, which Kim described as one of high responsibility. The position, budgeted for a 40-hour week, involved administering a four-month certificate program for international students.

Kim agreed to the transfer but received no training. As a result of this lack of training, Kim was "forced" to work an average of 14 hours per day to adequately perform her duties. By working late hours, she was able to complete every assignment.

Kim was terminated on September 10, 1996. Regents gave two reasons for the termination: (1) she worked late hours, which caused the janitor to complain, and (2) the instructors in the department complained she was not completing her work. Kim alleged the latter reason was a sham because when she questioned the instructors, they denied complaining and affirmed she was doing a good job.

Kim "was replaced by *two* fulltime equivalent positions." (Original italics.) The new hires were "well under" 40 years old; Kim was "well over 40 years old, and under 65."

Kim also alleged she was "compelled to work approximately 500 hours of overtime" for which she has not been compensated. She earned $9,406 for overtime, but was only paid $3,467, with $5,939 unpaid. Kim asserts that the Regents were required to pay overtime under her employment agreement, the collective bargaining agreements, rulings of the state Industrial Welfare Commission (IWC) and the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.).

Kim sued the Regents in September 1998. She did not have an attorney. Her first amended complaint, filed that December, was also prepared without assistance of counsel. However, thereafter she retained counsel; he appeared to oppose the Regents' demurrer.

The court permitted Kim to file two additional amended pleadings, culminating in the third amended complaint wherein she purported to allege causes of action for (1) breach of covenant of good faith and fair dealing; (2) violation of Labor Code section 1194; and (3) violation of Government Code section 12941 (age discrimination). This time the court sustained the Regents' demurrer to the third amended complaint without leave to amend and

dismissed the action. The court concluded that Kim failed to plead the existence of a contract; failed to state a claim under Labor Code section 1194; and that her age discrimination claim was barred by the statute of limitations.

## II. Discussion

### A. *Kim Cannot State a Claim for Breach of the Implied Covenant*

Kim has alleged that "the parties entered into a contract of employment. This contract was both written and oral, and contained provisions implied in fact and in law. The contract was accretive in nature, and changed in its essential terms over the years." The Regents demurred to the first cause of action on grounds that employees of the University of California hold their employment by statute, not contract.

■ The covenant of good faith and fair dealing arises out of the contract itself. It is read into contracts to protect the express contractual promises of the contract, rather than to protect a general public policy interest not directly tied to the contract's purposes. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 690 [254 Cal.Rptr. 211, 765 P.2d 373] (*Foley*).) Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant. (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49 [275 Cal.Rptr. 17] [appellants could not state cause of action for breach of implied covenant because they were in relationship of real estate developer to government land use regulators, not in contractual relationship].)

■ In California public employment is held not by contract, but by statute. (*Miller v. State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970] (*Miller*).) Relying on *Miller*, our Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) This same general principle of law applies to civil service and noncivil service public employees alike. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690 [40 Cal.Rptr.2d 125] (*Hill*).)

In *Hill, supra*, 33 Cal.App.4th 1684, a city employee who lost his management position went to trial and won on his breach of the implied covenant cause of action. Vacating this judgment, the reviewing court held that the

terms of Hill's employment were established by law, not contract (*id.* at p. 1692), and "[t]hus as a matter of law, [he] was not entitled to contract remedies against the City for his removal from the position of managing director. His remedies, if any, were confined to those provided by statute or ordinance." (*Id.* at p. 1690, fn. omitted.)

The University is a statewide administrative agency with constitutionally derived powers. (Cal. Const., art. IX, § 9, subd. (a); *Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276] (*Santa Monica*).) Its employees are public employees. (See *Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 860-861 [72 Cal.Rptr. 756].) The University is administered by the Regents. (Cal. Const., art. IX, § 9, subd. (a).) Regents have rulemaking and policy-making power in regard to the University; their policies and procedures have the force and effect of statute. (*Santa Monica, supra,* 77 Cal.App.3d at p. 135.)

*Miller* and *Hill* apply. Kim cannot state a cause of action against the Regents for breach of contract or breach of the implied covenant.

Interestingly, Kim does not mention *Hill* in her briefs. Rather, she relies first on *Read v. City of Lynwood* (1985) 173 Cal.App.3d 437 [219 Cal.Rptr. 26], wherein a city employee fired under procedures contrary to a city ordinance was permitted to sue for the *tort* of wrongful discharge. (*Id.* at pp. 443-445.) Reed did not discuss any right the employee might have to sue for contractual breach of the implied covenant.

Appellant also cites *Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303 [266 Cal.Rptr. 1]. Again the employee's claim was for tortious breach of the implied covenant of good faith and fair dealing. The discussion in *Mouchette* focussed on the impact of *Foley* on this cause of action. With no inquiry into the public employment issue, the court rejected the argument that the plaintiff's tort claim should be dismissed, noting that *Foley* permitted contractual remedies for breach of the covenant, and substantial evidence supported tort damages on another theory. (*Id.* at p. 315.)

B. *Kim Cannot State a Claim for Overtime Pay Under Labor Code Section 1194*

Kim also asserts contractual and statutory rights to overtime payment. As to her contractual assertions, *Miller* and *Hill* are dispositive. As to statutory rights, she maintains entitlement to overtime under rulings of the

state IWC and the federal FLSA, through the vehicle of Labor Code section 1194.[1] Neither claim has merit.

### 1. State Claim

It is the duty of the IWC to set minimum wages and maximum hours. (Lab. Code, §§ 1173, 1185; see *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 697-698 [166 Cal.Rptr. 331, 613 P.2d 579].) The wage order pertinent to Kim's occupation[2] specifically states that its provisions "shall not apply to employees directly employed by the State or any county, incorporated city or town or other municipal corporation . . . ." (Cal. Code Regs., tit. 8, § 11040, subd. 1(B).) As well, the wage order's overtime provisions do not apply to "persons employed in administrative, executive, or professional capacities." (*Id.* at § 11040, subd. 1(A).)

Kim argues that although she was a public employee, she was not employed directly by the state, citing article IX, section 9, subdivision (a) of the California Constitution, which provides: "The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government . . . ."

Regardless of whether Kim was directly employed by the state within the meaning of the above regulation, the Regents are nonetheless exempt from its mandate by virtue of their constitutional status. Paralleling the Regents' broad powers to organize and govern the university is the general immunity from legislative regulation enjoyed by the University and its Regents. While the University and Regents are intended to operate as independently of the state as possible, there are three areas in which they are subject to legislative regulation: appropriations regarding salaries; general police power regulations; and regulations governing matters of statewide concern not involving internal university affairs. (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277] (*Labor Council*).)

In light of this formidable autonomy, our Supreme Court concluded that the Regents were free from regulation under Education Code section 92611,

---

[1] Labor Code section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

[2] The wage order does not specifically include administrative assistants, the most recent position held by Kim, but it does apply, and is not limited to, a host of specific occupations, including clerks, typists, secretaries and "kindred occupations." (Cal. Code Regs., tit. 8, § 11040, subd. 2(C).)

which requires them to set minimum salary rates for certain employees at or above the prevailing wage rates in various localities. The high court reasoned first that a provision requiring an employer to pay prevailing wages in the community is not an appropriation bill. Nor was the prevailing wage requirement a general regulation pursuant to police powers applicable to private individuals and corporations. Finally, a prevailing wage requirement was a matter of local, not statewide concern. (*Labor Council, supra*, 26 Cal.3d at pp. 789-790.)

More recently, in *Regents of University of California v. Aubry* (1996) 42 Cal.App.4th 579 [49 Cal.Rptr.2d 703] (*Aubry*), the reviewing court held that the constitutional exemption from state regulation allowed the Regents to ignore the prevailing wage law (Lab. Code, § 1770 et seq.) with respect to private contractors building subsidized married, faculty and staff housing for the University. Relying on *Labor Council*, the *Aubry* court held that the Regents were free to "further its core educational function by not paying prevailing wages." (*Aubry, supra*, at p. 591.)

The logic of *Labor Council* and *Aubry* applies equally to Kim's state overtime claim. Payment of overtime wages is not an appropriation bill or a general regulation pursuant to police powers applicable to private individuals and corporations.[3] Like *Aubry* and *Labor Council*, the issue here pertains to the determination of the amount of wages to be paid to individual employees. *Aubry* held that the prevailing wage law was not such a matter of statewide concern as to outweigh the ability of the university to pay lower wages to advance its educational objectives. (*Aubry, supra*, 42 Cal.App.4th at pp. 590-591.) The issue of overtime wages is much the same. Moreover, the fact that the IWC regulation exempts professionals and all state, county and municipal employees from its overtime order indicates that the regulation is not *generally* applicable to private persons and corporations and that at least with respect to the determination of wages to be paid by public entities—is not a matter of statewide concern.

## 2. *Federal Claim*

Kim also claims rights to overtime under the FLSA. However, as noted above, she seeks to enforce that right in an action under Labor Code section

---

[3]*De Canas v. Bica* (1976) 424 U.S. 351, 356-357 [96 S.Ct. 933, 936-937, 47 L.Ed.2d 43], cited by Kim, while broadly acknowledging the state's authority under police powers to regulate the employment relationship to protect workers within a state, does not make any mention of overtime wage laws or compensation of public employees. Nor, as Kim suggests, has the Supreme Court said overtime wage requirements apply to all public employees, citing *Garcia v. San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528, 532-533 [105 S.Ct. 1005, 1007-1008, 83 L.Ed.2d 1016]. The issue there was whether a local transit authority, which received substantial federal subsidies, was subject to minimum wage and overtime requirements of the FLSA.

1194. The short rejoinder to this contention is that the remedies available under the FLSA are exclusive. (*Lerwill v. Inflight Motion Pictures, Inc.* (N.D.Cal. 1972) 343 F.Supp. 1027, 1028-1029; *Britt v. The Grocers Supply Co., Inc.* (5th Cir. 1992) 978 F.2d 1441, 1448.) Kim has chosen not to bring an action under the FLSA. She cannot circumvent the FLSA through the state Labor Code.

### 3. *Kim's Age Discrimination Claim Is Time-barred*

■ With her third amended complaint, filed April 26, 1999, Kim for the first time attempted to allege a cause of action for age discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Now, Kim charged that the true reason she was fired was because of her age, noting she was "well over 40 years old, and under 65" while the two employees replacing her were "well under 40." She declared that youth was not a "bonafide occupational qualification" for the job and concluded there was no lawful business reason to employ a younger person. Finally, Kim related that she filed a complaint with the Department of Fair Employment and Housing (DFEH). DFEH issued its "right to sue" letter on September 10, 1997.

A plaintiff charging discrimination in employment can file a civil suit against his or her employer within one year from the date of the DFEH's right to sue letter. (Gov. Code, § 12965, subd. (b).) Here, Kim pled her age discrimination cause of action in April 1999. The question is whether that claim relates back to her original complaint, filed September 9, 1998—one day before expiration of the one-year statute of limitations.

An amendment filed after the statute of limitations has run will be deemed filed as of the date of the original complaint "provided recovery is sought in both pleadings on the same general set of facts." (*Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681].) A newly pled cause of action rests upon the same facts when it involves the same accident and the same offending instrumentality. (*Goldman v. Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085, 1094 [265 Cal.Rptr. 294].)

Both parties rely on *Goldman*. There, the plaintiff initially sued his corporate employer and various supervisors for intentional infliction of emotional distress, spelling out several instances of abuse, including calling him a " 'fucking Jew.' " (*Goldman v. Wilsey Foods, Inc., supra*, 216 Cal.App.3d at p. 1091.) Amendments were allowed to allege a FEHA cause of action because the two sets of factual allegations pertaining to his injuries and the parties "match . . . in every particular." (*Id.* at p. 1094.)

*Coronet Manufacturing Co. v. Superior Court* (1979) 90 Cal.App.3d 342, 347 [153 Cal.Rptr. 366] is an example where the two sets of factual allegations do not match up. There, the original complaint alleged that decedent was electrocuted while using a defective hair dryer; the amended complaint identified the instrumentality of death as a lamp socket and switch manufactured by another defendant. The trial court overruled that defendant's demurrer. The reviewing court directed the lower court to vacate its order and enter an order sustaining the demurrer with leave to further amend. The reviewing court held that the same general facts did not exist because although there was just a single death and electrocution, the pleadings involved different accidents and different offending instrumentalities. (*Ibid.*)

This case falls within the *Coronet* camp. While there is just one employer and one termination, the wrongful conduct described in the discrimination claim does not arise out of the same set of facts that support Kim's contractual and overtime claims. There was nothing in the first three pleadings concerning disparate treatment, intentional discrimination, Kim's age or comments or actions related to her age—and no facts concerning replacement hires, let alone their relative ages. Kim makes much of the fact that the Regents had notice of the age discrimination claim because she had complained to the DFEH. However, with respect to the civil action, the Regents had every reason to believe that Kim had abandoned her discrimination claim since she filed in superior court one day prior to the expiration of the pertinent statute of limitations, and then repeatedly declined to pursue the age discrimination angle. The trial court correctly concluded that Kim's third cause of action did not relate back to the original complaint.

We affirm the judgment.

Poché, Acting P. J., and Sepulveda, J., concurred.