[No. D055845. Fourth Dist., Div. One. Jan. 6, 2011.]

MICHAEL H. GOLDBAUM, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant and
Respondent.

COUNSEL

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, Richard A. Paul and Matthew J. Schenck for Defendant and Respondent.

OPINION

**McCONNELL, P. J.**—The California Constitution (art. IX, § 9, subd. (a)) grants the Regents of the University of California (the Regents) " ' "broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [R]egents." ' " (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 889 [80 Cal.Rptr.3d 690, 188 P.3d 629].) The Regents "function in some ways like an independent sovereign, retaining a degree of control over the terms and scope of its own liability." (*Id.* at p. 890.) The Legislature, however, may regulate the Regents' conduct in limited areas. "[G]eneral police power regulations governing private persons and corporations may be applied to the university," as well as regulations of "statewide concern not involving internal university affairs." (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277] (*San Francisco Labor Council*).)

Courts have consistently held the Regents are exempt from statutes regulating the wages and benefits of employees and other workers, including those pertaining to prevailing wages, overtime pay, and indemnification for the cost of work uniforms and maintenance, on the ground those matters are internal affairs of the university that do not come within any of the exceptions to constitutional immunity. (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 788; *Regents of University of California v. Aubry* (1996) 42 Cal.App.4th 579, 587–588 [49 Cal.Rptr.2d 703] (*Aubry*); *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 167 [95 Cal.Rptr.2d 10] (*Kim*); *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 344 [34 Cal.Rptr.3d 635].)

The question on appeal here, one of first impression, is peripherally related to these wage and benefit opinions: Are the Regents constitutionally immune from the reach of Labor Code section 218.5,[1] which mandates an award of attorney fees and costs to the prevailing party in an "action brought for the nonpayment of wages, fringe benefits, or . . . . pension fund contributions"?

---

[1] All further unspecified statutory designations are also to the Labor Code.

We answer the question in favor of the Regents' autonomy, and accordingly, affirm a judgment denying Michael H. Goldbaum's motion for attorney fees in an action against the Regents to establish his eligibility for pension fund benefits.

## BACKGROUND

Goldbaum is a professor of ophthalmology at the University of California, San Diego (UCSD). He began working for UCSD in January 1977, and between 1977 and 1992 he devoted more than 50 percent of his work time to UCSD. In 1979 he received full tenure.

In February 2008 Goldbaum filed a petition for writ of mandate and complaint against the Regents for declaratory relief and breach of contract (complaint). The complaint alleged an element of his employment was participation in the University of California Retirement Plan (UCRP); under the UCRP, an employee's pension increases with longer employment; and UCSD had failed to report to the UCRP that Goldbaum had been an employee between 1977 and 1992. Goldbaum was considering retirement, and he sought a judicial determination that he is eligible for pension benefits covering his entire period of employment and a writ of mandate ordering UCSD to accurately report his employment to the UCRP. The Regents disputed that Goldbaum was eligible for pension benefits between 1977 and 1992.

Both parties moved for summary judgment or adjudication. While the motions were pending, the parties settled the matter. The Regents agreed that Goldbaum would be considered an eligible employee during the disputed period "for purposes of calculating his UCRP Service Credit." The Regents had entirely funded a retirement account for Goldbaum, and he was required to cause the account funds "to be rolled over to UCRP to offset the cost to UCRP for any additional years of Service Credit allocated for the Disputed Period." Goldbaum reserved his right, if any, to seek attorney fees and costs.

Goldbaum moved for an award of attorney fees and costs under section 218.5. In opposition, the Regents argued they are constitutionally immune from the statute, and in any event the writ proceeding was not an "action" within the meaning of the statute and Goldbaum was not the prevailing party. The court agreed with the Regents on the constitutionality issue and denied the motion. The court relied on *Kim, supra*, 80 Cal.App.4th 160, one of a

line of opinions holding wage and benefit matters are internal university affairs not subject to state regulation. A dismissal with prejudice was entered on September 17, 2009.[2]

## DISCUSSION

## I

### *Appellate Jurisdiction*

■ Preliminarily, we dispose of the Regents' contention we lack jurisdiction to hear the appeal because no judgment was entered. The court's denial of Goldbaum's motion and the later dismissal of the action *with prejudice* have the legal effect of a final, appealable judgment, which encompasses the ruling on his motion for fees. (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 974 [125 Cal.Rptr.2d 115] (*Gutkin*); *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 792–793 [181 Cal.Rptr. 340] [voluntary dismissal to expedite appeal after adverse ruling treated as judgment for purposes of appeal].) We presume he dismissed the complaint with prejudice for the purpose of expediting the appeal. " '[M]any courts have allowed appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the theory the dismissals were not really voluntary, but only done to expedite an appeal.' " (*Gutkin*, at pp. 974–975.)

The Regents cite a portion of *Gutkin* that is irrelevant because it pertains to the voluntary dismissal of an action without prejudice. The court explained, "Because Gutkin dismissed his remaining claims in this case *without prejudice*, the voluntary dismissal could not have the legal effect of a final judgment, and could not serve to expedite an appeal. By voluntarily dismissing the action *without prejudice* Gutkin lost his ability to challenge the trial court's interim orders." (*Gutkin, supra*, 101 Cal.App.4th at p. 975.)

## II

### *Section 218.5/Constitutional Immunity*

### A

■ Generally, a party may recover attorney fees only when a statute or contract provides for fee shifting. (*Santisas v. Goodin* (1998) 17 Cal.4th 599,

---

[2] We deny the Regents' July 15, 2010 request, opposed by Goldbaum, that we take judicial notice of a second petition for writ of mandate he filed against the Regents after the court issued its judgment in this case. The petition is not relevant to the judgment or our review.

606 [71 Cal.Rptr.2d 830, 951 P.2d 399].) Section 218.5 provides for fee shifting in favor of the party that prevails on a claim for unpaid wages and specified benefits. Section 218.5 provides: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194 [minimum wages and overtime compensation]."

■ "The California Constitution establishes the Regents as a 'public trust . . . with full powers of organization and government.' (Cal. Const., art. IX, § 9, subd. (a).)" (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].) "The authority granted the Regents includes 'full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowment of the University and the security of its funds.' [Citation.] Thus, '[t]he Regents have been characterized as "a branch of the state itself" [citation] or a "statewide administrative agency" [citation]' [citation], and '[i]t is apparent that the Regents as a constitutionally created arm of the state have virtual autonomy in self-governance' [citation]. Therefore, '[t]he Regents have the general rule-making or policy-making power in regard to the University [citation], and are . . . fully empowered with respect to the organization and government of the University.' " (*Id.* at pp. 320–321.) The Regents have "general immunity from legislative regulation." (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 788.)

The Regents, however, are not entirely autonomous. The Legislature may regulate the Regents' conduct in three areas. "First, the Legislature is vested with the power of appropriation, preventing the [R]egents from compelling appropriations for salaries." (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 789.) "Second, it is well settled that general police power regulations governing private persons and corporations may be applied to the university. [Citations.] For example, workers' compensation laws applicable to the private sector may be made applicable to the university." (*Ibid.*) "Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs." (*Ibid.*)

B

Goldbaum asserts section 218.5 is applicable to the Regents as a general police power regulation governing private persons and corporations. The

issue of the Regents' constitutional immunity is a question of law we review independently. (*Aubry, supra,* 42 Cal.App.4th at p. 585.)

■ A line of opinions establishes that matters pertaining to wages and benefits are internal university affairs not subject to any of the exceptions to the Regents' constitutional immunity from state regulation. In *San Francisco Labor Council, supra,* 26 Cal.3d 785, the plaintiffs brought a writ proceeding to compel the Regents to fix salary rates for certain university employees at or above the prevailing wage rates for specified localities under Education Code section 92611, which the Legislature enacted solely to apply to the Regents.[3] (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 787.) The court held the statute is unconstitutional because it "cannot be brought within any of the three categories" in which the Regents are subject to legislative regulation. (*Id.* at p. 789.) The court explained Education Code section 92611 could not be "construed as a general regulation pursuant to the police power applicable to private individuals and corporations," and "a prevailing wage requirement is not a matter of statewide concern." (*San Francisco Labor Council,* at p. 790.) The court relied on its opinion in *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1], in which it held " 'the determination of wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern.' " (*San Francisco Labor Council,* at p. 790.) The court elaborated that a "statute requiring payment of prevailing wages or more is effectively a salary setting statute. Public agencies' use of taxpayers' funds to pay in excess of a prevailing wage is unwarranted. . . ." (*Ibid.*) The court rejected the argument *Sonoma* was inapplicable to the Regents, explaining "[s]alary determination is as important to the autonomy of the university as it is to the independence of chartered cities and counties." (*San Francisco Labor Council,* at p. 791.)

In *Aubry, supra,* 42 Cal.App.4th 579, 587–588, the court, citing language from *San Francisco Labor Council,* held the Regents were not required to pay private contractors the prevailing wage under section 1770 et seq., which applies to public works, for the construction of student and staff housing.[4]

---

[3] Education Code section 92611 provides: "The minimum and maximum salary limits for laborers, workmen, and mechanics employed on an hourly or per diem basis need not be uniform throughout the state, but the [R]egents shall ascertain, as to each such position, the general prevailing rate of such wages in the various localities of the state. [¶] In fixing such minimum and maximum salary limits within the various localities of the state, the [R]egents shall take into account the prevailing rates of wages in the localities in which the employee is to work and other relevant factors, and shall not fix the minimum salary limits below the general prevailing rates so ascertained for the various localities."

[4] Section 1771 provides: "Except for public works projects of one thousand dollars . . . or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed . . . shall be paid to all workers employed

The court rejected the argument the matter was one of statewide concern applicable to the Regents, since the projects "involve internal UC affairs vital to its core educational function." (*Aubry, supra*, 42 Cal.App.4th at p. 591.) The court explained: "Ensuring access to qualified students who otherwise could not attend, and securing the services of outstanding faculty and staff who otherwise might decline to accept or continue employment, is at the heart of UC's educational function, as is giving those students who do attend the best education possible." (*Id.* at p. 590.) The court also noted the "prevailing wage law is not universally applied." (*Ibid.*)

Here, the trial court relied on *Kim, supra*, 80 Cal.App.4th 160, 166, in which the court held the Regents are constitutionally immune from liability under section 1194 for the payment of overtime wages.[5] The court explained: "The logic of [*San Francisco*] *Labor Council* and *Aubry* applies equally to Kim's state overtime claim. Payment of overtime wages is not an appropriation bill or a general regulation pursuant to police powers applicable to private individuals and corporations. Like *Aubry* and [*San Francisco*] *Labor Council*, the issue here pertains to the determination of the amount of wages to be paid to individual employees. *Aubry* held that the prevailing wage law was not such a matter of statewide concern as to outweigh the ability of the university to pay lower wages to advance its educational objectives. [Citation.] The issue of overtime wages is much the same." (*Kim, supra*, 80 Cal.App.4th at p. 167, fn. omitted.)[6]

In *In re Work Uniform Cases, supra*, 133 Cal.App.4th at page 338, the court held the Regents are constitutionally immune from the reach of section 2802, which pertains to an employer's obligation to indemnify an employee for necessary expenses and losses incurred in discharging job duties.[7] Specifically at issue was whether the statute requires employers to pay for work uniforms and their maintenance. As to the Regents, the court explained:

on public works. [¶] This section is applicable only to work performed under contract, and is not applicable to work carried out by a public agency with its own forces. . . ."

[5] Section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

[6] Goldbaum attempts to distinguish *Kim* on the ground it concerns a regulatory order rather than a statute. In *Kim*, however, the applicability of a statute, section 1194, was at issue. (*Kim, supra*, 80 Cal.App.4th at pp. 163, 164, 165–168.) As an *additional* basis for finding for the Regents, the court cited a regulatory order. (*Id.* at p. 167.)

[7] Section 2802, subdivision (a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be lawful."

"Even if section 2802 had some application to reimbursement for ordinary costs related to employee uniforms, that interpretation would not bring it within the narrow group of three areas in which the Regents are subject to legislative regulation. Section 2802 is not an appropriations statute or a general police power regulation. . . . [I]t does not relate to a matter of statewide concern in the context in which plaintiffs seek to have it applied. To the contrary, the determination of employee compensation and benefits is particularly a matter within the Regents' broad constitutional grant of authority to manage its own internal affairs." (*In re Work Uniform Cases, supra,* 133 Cal.App.4th at p. 344.)

The Regents contend the above opinions control because Goldbaum's action pertained to the UCRP, which "is unquestionably a matter of the University's internal regulation." (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567].) Unlike the statutes at issue in those opinions, however, section 218.5 does not purport to regulate employee pay or benefits. Rather, section 218.5 is a bilateral fee-shifting statute that requires the losing party in an action on wages or benefits to pay the opposing party's attorney fees. The parties have not cited us to any legal authority precisely on point, and we have found none in our independent research.

■ Goldbaum contends section 218.5 applies to the Regents because the regulation of attorney fees has been called an exercise of police power. The definition of "police power" is broad and rather nebulous. "The police power is the authority to enact laws to promote the public health, safety, morals and general welfare. [Citation.] Legislation is within the police power if it is reasonably related to a proper legislative goal." (*Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 206 [56 Cal.Rptr.2d 732].) " 'An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition.' " (*Ibid.,* quoting *Berman v. Parker* (1954) 348 U.S. 26, 32 [99 L.Ed. 27, 75 S.Ct. 98]; 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 976, p. 538 ["It has been said that the police power is simply the power of sovereignty or power to govern—the inherent reserved power of the state to subject individual rights to reasonable regulation for the general welfare."].)

■ We reject the notion that *whenever* a statute is arguably an exercise of the state's broad power to govern, it applies to the Regents. For instance, states "possess broad authority under their police powers to regulate the employment relationship to protect [state] workers," including the authority to enact wage laws. (*De Canas v. Bica* (1976) 424 U.S. 351, 356 [47 L.Ed.2d

43, 96 S.Ct. 933].) Yet, California courts have held certain wage laws do not apply to the Regents. (*San Francisco Labor Council, supra*, 26 Cal.3d at p. 787; *Kim, supra*, 80 Cal.App.4th 160, 167.) In *Scharf v. Regents of University of California* (1991) 234 Cal.App.3d 1393 [286 Cal.Rptr. 227], the court explained: "To be sure, a powerful state interest within the police power of the state *which cannot be effectuated without application to the University* will override a parochial concern of the University." (*Id.* at p. 1403, italics added [state statute prohibiting matriculation of unvaccinated persons prevailed over a university regulation dispensing such requirement].) The exercise of police power is subject to "specific constitutional limitations" (*Berman v. Parker, supra*, 348 U.S. at p. 32), including consideration of the Regents' constitutional immunity.

In support of his police power argument, Goldbaum relies on *Roa v. Lodi Medical Group* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164] (*Roa*). In *Roa*, the court rejected a constitutional challenge to a provision of the Medical Injury Compensation Reform Act of 1975 that placed limits on the amount of fees an attorney may charge on a contingent fee basis in a medical malpractice action (Bus. & Prof. Code, § 6146, subd. (a)). (*Roa*, at p. 923.) The court noted statutory limits on attorney fees are not uncommon and the validity of such legislation was well established. (*Id.* at p. 926.) "In this state, attorney fees have long been legislatively regulated both in workers' compensation proceedings [citation] and in probate matters." (*Ibid.*)

In *Roa*, the court relied on *Calhoun v. Massie* (1920) 253 U.S. 170 [64 L.Ed. 843, 40 S.Ct. 474] (*Calhoun*), which upheld a federal law that limited contingent fees to 20 percent of the recovery in actions against the United States arising out of the Civil War. (*Roa, supra*, 37 Cal.3d at p. 926.) *Roa* cites the following language from *Calhoun*: " 'By the enactment, from time to time, of laws prohibiting the assignment of claims and placing limitations upon the fees properly chargeable for services, Congress has sought both to prevent the stirring up of unjust claims against the Government and to reduce the temptation to adopt improper methods of prosecution which contracts for large fees contingent upon success have sometimes been supposed to encourage. *The constitutionality of such legislation* . . . resembling in its nature the exercise of the police power, *has long been settled.*' " (*Roa*, at pp. 926–927, citing *Calhoun*, at p. 174.)

Both *Roa* and *Calhoun* concerned the government's power to cap contingency fees, while section 218.5 does not concern the amount of fees an attorney may charge in wage and benefit litigation. If applied to the Regents, section 218.5 would require the Regents to pay the fees of a prevailing employee, without any control over the amount of the fees, subject only to the court's determination of reasonableness. Nothing in *Roa* or *Calhoun*

suggests a bilateral fee-shifting statute such as 218.5 should trump the Regents' constitutional immunity. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93].)[8]

Section 218.5 is silent as to the Regents. The Regents are an arm of state, and there is no suggestion the Legislature sought to impose the statute on the Regents. Further, section 218.5 is not uniformly applied. Under section 220, subdivision (b), cities, counties and other local public agencies are exempt from section 218.5.[9] To any extent the statute is arguably an exercise of police power as applied to private persons or corporations, its application to the Regents is unjustified as the sweeping exemption of public employers shows the statute may be effectuated without applying it to the Regents.

Additionally, in determining whether the police power exception applies we consider the particular capacity in which the Regents are acting. For instance, in *Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533 [131 Cal.Rptr. 228, 551 P.2d 844], the court held the Regents were not exempt from state usury law. The court explained that in "choosing to invest its endowment by extending loans to [private] borrowers . . . , the

---

[8] Goldbaum cites several other opinions that contain broad general language he deems helpful to his position. The cases are distinguishable factually, and because they are inapt we decline to discuss them at length. (*De Canas v. Bica, supra,* 424 U.S. 351 [law prohibiting California employer from knowingly hiring illegal alien was constitutional]; *Missouri, Kansas & Texas Railway Co. of Texas v. Cade* (1914) 233 U.S. 642 [58 L.Ed. 1135, 34 S.Ct. 678] [Texas law authorizing damages and attorney fees in wide range of actions was police regulation designed to promote prompt payment of small claims and to discourage unnecessary litigation]; *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 294–295 [32 Cal.Rptr. 830, 384 P.2d 158] [law giving firefighters right to join labor organizations was a matter of statewide concern]; *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc.* (1990) 221 Cal.App.3d 114, 117 [270 Cal.Rptr. 75] [under particular contract Regents were subject to public works prevailing wage designed to protect private sector employees on public works project that did not involve university's internal affairs]; *Marshall v. Foote* (1927) 81 Cal.App. 98, 103–104 [252 P. 1075] [workers' compensation law allowing employee to sue for damages and attorney fees when employer had no coverage was valid exercise of police power].) " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

[9] Section 220 provides: "(a) Sections 201.3, 201.5, 201.7, 203.1, 203.5, 204, 204a, 204b, 204c, 204.1, 205, and 205.5 do not apply to the payment of wages of employees directly employed by the State of California. Except as provided in subdivision (b), all other employment is subject to these provisions. [¶] (b) Sections 200 to 211, inclusive, and Sections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed by any county, incorporated city, or town or other municipal corporation. All other employments are subject to these provisions."

University is acting in a capacity no different from a private university, corporation, or individual investing in a similar manner." (*Id.* at p. 537.) The court concluded "the University is entitled to no sovereign protection in its lending decisions." (*Ibid.*)

Here, in contrast, an action against the Regents for a determination of eligibility under the UCRP arises out of their status as a *public employer*, and the *subject matter* of a suit giving rise to attorney fees under section 218.5 pertains to the Regents' internal affairs not subject to state regulation. While the wage and benefit opinions on which the Regents rely do not concern attorney fees, we do agree it would be incongruous to saddle the Regents with the other side's attorney fees in an action arising from wages and benefits. Forcing the Regents' to use public funds in that manner is unwarranted under the state's police power.

■ The exemption of all local agencies from section 218.5 (§ 220, subd. (b)) also tends to show section 218.5 is not a matter of statewide concern; there is a lack of uniformity. In any event, the Regents' autonomy from state regulation is subject to infringement only when the statewide concern at issue is unrelated to the Regents' internal affairs. (*San Francisco Labor Council, supra,* 26 Cal.3d at p. 789.) We conclude that because an underlying action giving rise to attorney fees under section 218.5 pertains to wages and benefits, matters of the university's internal affairs arising from the employer-employee relationship, the determination of whether to pay an opposing party's fees in such an action is also within the Regents' broad constitutional grant of authority to manage its own internal affairs.

■ We hold the Regents are constitutionally immune from the reach of section 218.5, and the American rule applies, under which each party bears its own attorney fees. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) We are not required to address the Regents' alternative contentions the judgment must be affirmed because this is not an "action" for wages or other benefits within the meaning of section 218.5, and Goldbaum is not the prevailing party.

C

Additionally, Goldbaum contends that because the Regents prayed for attorney fees in their original and amended answers to his complaint, they implicitly conceded the applicability of section 218.5, and thus they must pay his fees. The Regents' answers do not cite section 218.5, but Goldbaum says it is the only potential statutory basis for fees. The Regents point out, however, that Code of Civil Procedure section 128.5 potentially provided a

statutory basis for fees. It applies to "bad-faith actions or tactics that are frivolous or solely *intended to cause* unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).)

In any event, many pleadings include a prayer for attorney fees out of an abundance of caution, and a mere prayer for fees is an insufficient ground for an award of fees to the opposing party under a reciprocal fee statute. (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 681–682 [101 Cal.Rptr.2d 127] [in context of reciprocal contractual fees under Civ. Code, § 1717 the "test requires a party claiming attorney fees to establish that the opposing party actually would have been entitled to receive them if the opposing party had prevailed"; mere prayer for fees by opposing party is insufficient].) Since section 218.5 is inapplicable, Goldbaum cannot meet the test.

## DISPOSITION

The judgment is affirmed. The Regents are entitled to costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 23, 2011, S190617.