Filed 9/19/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA



| | |
|---|---|
| DANIEL BERMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent. | D065141<br><br><br><br>(Super. Ct. No. 37-2013-00053065 CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Affirmed.


Horvitz & Levy, Barry R. Levy, John F. Querio, Jeremy B. Rosen; Law Offices of David S. Bristol and David S. Bristol, for Plaintiff and Appellant.

Donald P. Margolis; Charles F. Robinson, Karen J. Petrulakis, Margaret L. Wu, Elisabeth Yap; Daniel W. Park; Paul, Plevin, Sullivan & Connaughton, Matthew J. Schenck and Angela T. Mullins, for Defendant and Respondent.

INTRODUCTION

Daniel Berman appeals the judgment denying his petition for writ of mandate against the Regents of the University of California (Regents).  He seeks to overturn a two-quarter suspension from the University of California San Diego (UCSD), which was imposed against him for hitting another student in the head with sufficient force to knock the other student to the ground and to cause him to lose consciousness, sustain a concussion and require medical attention.  Berman does not challenge the factual finding he violated UCSD's Student Conduct Code (the Code).[1]  His sole contention on appeal is the Code did not authorize either the student conduct officer responsible for his case, who is also a Dean of Student Affairs, or the Council of Deans of Student Affairs (Council of Deans) to impose suspension as a sanction when the student conduct review board did not recommend suspension.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Incident*

During an altercation on the night of February 22, 2013, involving a group of UCSD students, Berman admits he hit another student in the head with his fist causing

---

[1]     Unless otherwise indicated, all further Code references are to the UCSD's Student Conduct Code effective September 15, 2012, which governed the proceedings at issue and is part of the administrative record.

2

the other student to fall to the ground and lose consciousness. The other student

sustained injuries, including a concussion, and required medical treatment.[2]

*UCSD Student Conduct Proceedings*

The UCSD Office of Student Conduct notified Berman in writing of its receipt of

a report alleging Berman violated the Code by engaging "in physical acts of violence

with another UCSD student while possib[ly] under the influence of alcohol." It is a

violation of the Code and UCSD's community standards to engage in physical abuse

including "physical assault, battery, or conduct that threatens the health or safety of any

person." It is also a violation to engage in disorderly conduct.

The letter alleged multiple witnesses saw Berman "hit a member of the UCSD

soccer team while outside a social event" and "the individual was taken to the hospital for

the injuries that were sustained." Berman was offered the opportunity to meet with the

Dean of Student Affairs, Patricia Mahaffey, Ed.D., to discuss an administrative

resolution.

Enclosed with the notification were electronic copies of the Code and a copy of a

document entitled "Frequently Asked Questions About The Student Conduct Process."

This document explains the administrative resolution meeting, possible sanctions and the

---

[2]    In the administrative proceedings below, there were factual disputes regarding the events leading up to Berman striking the other student. Berman maintained the other student was the aggressor and Berman acted in self-defense. Berman also contended the other student's father called and threatened him after the incident saying the father would take everything in Berman's life because the father was good friends with the chancellor. These facts, however, are not relevant to this appeal since Berman does not contest the sufficiency of the evidence supporting the finding he violated the Code.

right to request a student conduct review if the student does not accept responsibility for the alleged Code violations.

In a student conduct review, a student has the opportunity to present information and witnesses regarding the case to a conduct board (board) consisting of students, faculty, and staff. After the review, the board determines whether or not the student is responsible for alleged Code violations and, if so, recommends appropriate sanctions. According to the document provided to Berman, the board's report is then forwarded to the student conduct officer "who will determine the final sanctions if [the student] is found responsible." For reviews involving suspension for an undergraduate student, "the Council of Deans of Student Affairs will determine the sanctions."

Berman participated in an administrative resolution meeting with the assigned student conduct officer, Dean Mahaffey. Thereafter, the matter proceeded to a student conduct review.

At the student conduct review hearing, the board heard witnesses and Berman's defense. The board made the following factual findings: (1) "[d]irectly before the altercation, loud and unreasonable noise was being created by [other individuals], excluding [Berman];" (2) "Berman was present at the date, time, and location of this altercation;" (3) "Berman stated that he struck [another student] during this altercation;" and (4) the other student "was treated at [a] hospital for injuries that he incurred during this altercation." After consideration of the incident report, the investigative report and statements at the review, the board concluded it is "more likely than not" Berman violated the Code's regulations against physical abuse by engaging in physical assault,

4

battery and conduct threatening the health or safety of any person. The board did not find Berman in violation of the regulation against disorderly conduct. The board recommended the following sanctions: (1) probation through tenure, (2) anger management workshop, (3) alcohol risk reduction seminar, and (4) semi-monthly conversations with Dean Mahaffey.

Dean Mahaffey received the report and recommendations from the review board along with the materials submitted to the board. She had the opportunity to review the audio recording and transcript of the hearing. After completing her review, Dean Mahaffey determined the board's finding Berman hit another student with sufficient force to require the other student to go to the hospital warranted more serious sanctions than the board recommended. She thought suspension was appropriate under the circumstances. Dean Mahaffey consulted with the Council of Deans and presented both the board's findings and the sanctions she recommended. The Council of Deans agreed suspension was appropriate and fair, as were other sanctions Dean Mahaffey recommended.[3]

---

[3] There is a discrepancy between the trial court's oral ruling at the hearing on Berman's petition for writ of mandate and the final minute order regarding the admission of Dean Mahaffey's declaration. In the tentative ruling, the court indicated its intention to sustain Berman's objections to the declaration as not properly part of the administrative record. At the hearing, the court stated it would change the tentative "just to fill in the gap in the administrative record." The court stated, "the administrative record will reflect, which is obvious[,] that she got the recommendation, didn't agree with it and sent it on to the Council of Deans and they did what they did and then the Provost did what they did." (Code Civ. Proc., § 1094.5, subd. (e); *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 88-89.) The final minute order, however, does not reflect this change.

Dean Mahaffey notified Berman he was found responsible for violations of the Code. She provided him a copy of the Student Conduct Review Report summarizing the board's findings and recommended sanctions. The letter then stated, "[a]fter reviewing the Student Conduct Review Report, the recommended sanctions, your student conduct record, and the [UCSD] Sanctioning Guidelines the Council of Deans of Student Affairs have imposed the following sanctions:" (1) probation through graduation from UCSD; (2) attendance at a two-session education and evaluation program regarding substance and alcohol use; (3) suspension from June 17, 2013 through March 14, 2014; and (4) no contact with the injured student until June 13, 2014.

Berman appealed the two-quarter suspension to the Council of Provosts asserting: (1) the finding by the board he was responsible for violation of the Code was not supported by the evidence at the hearing because he acted in self-defense and (2) the sanctions imposed by the Council of Deans should be reduced to the sanctions recommended by the board. The Council of Provosts reviewed Berman's appeal and "concluded that a two-quarter suspension is the appropriate sanction" for his violations of

---

We exercise our inherent power to correct what is apparently a clerical error in the minute order and consider the portions of Dean Mahaffey's declaration orally admitted by the trial court. (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 62-63.) " 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases.' " (*People v. Nesbitt* (2010) 191 Cal.App.4th 227, 233.) A discrepancy between a ruling as orally pronounced and as entered in the minutes is presumed to be the result of clerical error. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

6

the Code. The Council of Provosts also confirmed the other sanctions set forth in Dean Mahaffey's correspondence.

*Petition for Writ of Mandate*

Berman filed a petition for writ of mandate with the superior court pursuant to Code of Civil Procedure section 1094.5 contending the Council of Deans exceeded its jurisdiction under the Code by reviewing the matter and increasing the recommended sanctions to include suspension without further hearing. The petition also alleged the decision was not supported by the findings and the findings were not supported by the evidence, but Berman did not raise this allegation in the motion.

Berman sought and obtained an order from the superior court staying his suspension and allowing him to register for and attend classes until January 2, 2014, after the hearing on Berman's motion for peremptory writ of mandate. All other terms and conditions of the sanctions decision remained in effect.

On December 6, 2013, the superior court denied the petition for writ of mandate concluding the Council of Deans did not act in excess of its jurisdiction. After analyzing pertinent provisions of the Code, the court concluded the "Code does not bind the student conduct officer to the review board's recommendations. If the student conduct officer determined suspension was warranted, there is nothing in the Code that prohibits the student conduct officer from presenting this determination to the Council of Deans for review. In fact, it would be consistent with [the Code] to have such a determination reviewed by the Council of Deans before imposing suspension as a sanction." (Some

capitalization omitted.)  The court also determined the Code did not require another hearing before the Council of Deans.

*Suspension Stayed Pending Appeal*

At Berman's request, we issued a stay of Berman's suspension pending resolution of this appeal.  Berman was permitted to participate in commencement activities in June 2014, but will not receive his degree "until the student conduct process has been resolved" either by ruling of this court or fulfillment of the sanctions.[4]

## DISCUSSION

## I

We are asked in this case to interpret the provisions of the Code to decide if the Regents complied with its own policies and procedures when it suspended Berman. Berman contends we should apply de novo review because resolution of the issue involves undisputed facts and interpretation of the Code.  The Regents agree the issue on appeal is one of law, but ask us to give deference to the Regent's interpretation of the Code sections at issue.

"Generally, a court's determination of whether an agency's hearing procedures are in compliance with . . . an agency's own policies, requires application of the rules of statutory interpretation and construction.  (*Yamaha Corp. of America v. State Bd. of*

---

[4]     We grant Berman's unopposed request for judicial notice of a letter dated June 5, 2014, notifying him of the UCSD Executive Vice Chancellor's decision to hold Berman's degree as permitted by the Code until the student conduct process is resolved. (Evid. Code, § 452, subd. (c); *Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 223, fn. 7.)

*Equalization* (1998) 19 Cal.4th 1, 12.) In such cases, ' "The appropriate mode of review . . . is one in which the judiciary, although taking ultimate responsibility for the construction of the statute, accords great weight and respect to the administrative construction. [Citation.]" ' (*Ibid.*; see *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 [general rule of judicial deference to agency's interpretation of its own regulations, unless interpretation is clearly erroneous or unreasonable].)" (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1488 (*Do*).) The reason we give weight to the agency interpretation of its own policies and procedures is because the agency has developed a level of "expertise" in light of its familiarity with the legal and regulatory issues. (*Yamaha Corp. of America v. State Bd. of Equalization*, *supra*, at pp. 11-12.)

In addition to the Regent's expertise and familiarity with its student conduct procedures, "[t]he California Constitution (art. IX, § 9, subd. (a)) grants [the Regents] ' " 'broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [R]egents.' " ' " (*Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 706 (*Goldbaum*).) The constitution provides the Regents with "all the powers necessary or convenient for the effective administration of its trust, including the power . . . to delegate to its committees or to the faculty of the university, or to others, such authority or functions as it may deem wise." (Cal. Const. art. IX, § 9, subd. (f).) "The Regents 'function in some ways like an independent sovereign, retaining a degree of control over the terms and scope of its own liability.' " (*Goldbaum*, *supra*, 191 Cal.App.4th at p. 706.) "[A]s ' " 'a constitutionally

9

created arm of the state [it has] virtual autonomy in self-governance.' " ' " (*Do*, *supra*, 216 Cal.App.4th at p. 1487.)

This power necessarily includes quasi-judicial administrative authority to resolve disciplinary disputes by applying University policies to particular cases. (See *Do*, *supra*, 216 Cal.App.4th at p. 1487 [application of University policy to employment disputes].) "[T]he University and its Board of Regents are public legal entities ' "charged with the government of a public trust." ' " (*Ibid*.) Our Supreme Court has held "that the Regents, to be effective, must have considerable discretion to determine how best to carry out the University's educational mission." (*Smith v. Regents of University of California* (1993) 4 Cal.4th 843, 852.) Therefore, although we independently review and interpret language of the Code, we afford the Regents' interpretation of its Code great weight.

II

To begin our analysis, we summarize UCSD's procedures for student discipline as described in the pertinent portions of the Code. The Code "sets forth the applicable standards of [the] community and authorizes the administration of student conduct at [UCSD]." (Code, § I.) "Physical abuse including, but not limited to . . . physical assault, battery, or conduct that threatens the health or safety of any person" is conduct that "violate[s] the University's community standards and may be subject to action under the processes outlined in [the] Code." (Code, § VII., subd. G.)

Reports of alleged Code violations are reviewed by the Office of Student Conduct, which determines "whether there is reasonable cause to process the report and forward it to the Dean or his/her designee for disposition." (Code, § IX.) If reasonable cause is

10

found, the matter is referred to the Dean for resolution. Options for resolution include an administrative resolution meeting with the student conduct officer. (Code, § X.)

A student conduct officer is "a University Official authorized on a continuing basis . . . to impose or recommend sanction(s)." (Code, § II., subd. R.) Typically, student conduct officers include "Deans, Assistant Deans, Resident Deans, Assistant Resident Deans, and the Director of Student Conduct." (*Ibid*.) The duties and responsibilities of Deans of Student Affairs include serving as a student conduct officer and "[r]eview[ing] sanctioning recommendations to promote consistency and fairness when required by this Code on an individual or group basis (e.g. Council of Deans of Student Affairs)." (Code, § VI., subd. B.) In addition to conducting administrative resolution meetings, the duties of a student conduct officer "include" (1) determining and imposing fair and appropriate sanctions for students accepting responsibility for violating the Code or (2) referring the matter to a student conduct review if the student does not accept responsibility for violating the Code. (Code, § VI., subd. C.)

If a matter is referred for a student conduct review, a board facilitates the review and determines whether a student has violated the Code based on a preponderance of the evidence. (Code, § VI., subds. D.1-2.) "A student conduct review provides an opportunity for the applicable [board] . . . to hear and receive the [student's] information, witnesses and perspective about the incident." (Code, § XIII., subd. A., some capitalization omitted.) The board then "*[r]ecommend[s]* fair and appropriate sanctions for [students] found responsible for violating [the] Code." (Code, § VI., subd. D.3, italics added.) "If the [student] is found responsible for one or more of the alleged violation(s)

11

of [the] Code, the board . . . will determine fair and appropriate sanction(s) *and make sanction recommendations*." (Code, § XIII., subd. R.3, some capitalization omitted, italics added.)

If the recommended sanctions do not include suspension or dismissal, the Student Conduct Review Report, is forwarded to the original student conduct officer. "After *reviewing* the report, the original student conduct officer will provide the [student] in writing with the [board's] review report and imposed sanctions . . . ." (Code, § XIII., subd. S.1., some capitalization omitted, italics added.) If recommended sanctions include suspension or dismissal, the review report is forwarded directly to the Council of Deans of Student Affairs and "the Council of Deans of Student Affairs *will make a final determination* of the sanction(s)." (Code, § XIII., subd. S.2., italics added.)

### III

Berman contends Dean Mahaffey, as the student conduct officer, had no authority under the Code to increase the sanctions recommended by the board, but only had authority to modify the recommended sanctions downward. He also contends the Council of Deans had no authority or jurisdiction to review the matter because the board did not initially recommend suspension as a sanction. We disagree.

Reading the Code as a whole, it is apparent a board makes sanction recommendations, but does not have final authority to impose sanctions. (Code, § XIII., subds. A. & R.3.) Sanction recommendations by a board must be reviewed either by the student conduct officer or by the Council of Deans before a final determination of sanctions is made. (Code, § XIII., subds. S.1. & S.2.)

12

The Code specifies the duties and responsibilities of a student conduct officer "include" determining and imposing sanctions for students accepting responsibility for violating the Code.  (Code, § VI., subd. C.4.)  However, a student conduct officer is also "authorized on a continuing basis by the Dean . . . to conduct administrative resolution meetings and/or student conduct reviews with [students] alleged to have violated this Code *and to impose or recommend sanction(s)*."  (Code, § II., subd. R., some capitalization omitted, italics added.)  Nothing in this language limits the authority of a student conduct officer to impose only those sanctions recommended by the board or to impose lesser sanctions.

This is particularly true where the student conduct officer is a Dean of Student Affairs.  A " 'Dean' " is defined as "the [UCSD] staff or faculty member . . . responsible for *overseeing* student conduct matters of an undergraduate college . . . ."  (Code, § II., subd. H., italics added.)  Along with oversight, the duties and responsibilities of the Deans of Student Affairs include not only serving as a student conduct officer, but also "[r]eview[ing] sanctioning recommendations to promote consistency and fairness when required by this Code on an individual or group basis (e.g. Council of Deans of Student Affairs)."  (Code, § VI., subd. B.3-4.)

Contrary to Berman's contention, we do not read Code section VI, subdivision B, as circumscribing a Dean's ability to review sanction recommendations with an eye toward promoting consistency and fairness only when a board recommends suspension. A Dean, serving as a student conduct officer, is required to review board recommendations when they do not include suspension.  (Code, § XIII., subd. S.1.)  Code

13

section VI., subdivision B.4., provides it is a Dean's duty to conduct such a review to promote consistency and fairness. It also authorizes the Dean to review matters individually *or* on a group basis with the Council of Deans.

Therefore, we agree with the trial court. Nothing in the Code prohibits a Dean, acting as a student conduct officer, from disagreeing with a board's recommendations and concluding consistency and fairness require suspension under given circumstances. Nor does the Code prohibit the Dean from consulting with or referring the matter to the Council of Deans after reaching this conclusion. Indeed, if the Dean, as the student conduct officer, believes suspension is appropriate, it is entirely consistent with the Code for the Dean to make that recommendation to the Council of Deans. (Code, §§ XI., subd. I. [for students accepting responsibility, student conduct officer's suspension recommendation reviewed by Council of Deans]; XIII., subd. S.2. [suspension recommendations from the board reviewed by Council of Deans].)

This interpretation advances the policy of the Code to ensure consistency and fairness across student disciplinary proceedings throughout the University. It is supported by the University's publication, Frequently Asked Questions About The Student Conduct Process, which was provided to Berman along with the initial correspondence regarding the report about alleged Code violations. Summarizing the Code's procedures, this document states after a conduct board review hearing, the student conduct officer "will determine the final sanctions if you are found responsible" and for reviews "involving a suspension or dismissal for an undergraduate student, the Council of Deans of Student Affairs will determine the sanctions." Such review allows the Council

14

of Deans, one from each of the six UCSD colleges, to review recommended sanctions in the context of disciplinary sanctions across the undergraduate colleges. It advances the University's policy that sanctions should be "designed to be consistent across colleges and residential areas."

As required by the Code, Berman received the benefit of a student conduct review. The board made recommended sanctions, which Dean Mahaffey reviewed, as was her duty. After reviewing the recommendations for consistency and fairness, she concluded suspension was warranted under the circumstances. She then consulted with the Council of Deans who, after reviewing the matter and her recommendation of suspension, determined suspension was appropriate. Berman availed himself of the right under the Code to an administrative appeal to the Council of Provosts, which also affirmed the suspension sanction. Under these circumstances, we find no basis to overturn the suspension.

## DISPOSITION

The judgment is affirmed. The stay issued on December 31, 2013, is vacated. The Regents are entitled to its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

NARES, J.

15