Filed 4/5/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER TEACHER,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>CALIFORNIA WESTERN SCHOOL OF LAW,<br><br>　　Defendant and Respondent. | D078550<br><br><br><br>(Super. Ct. No. 37-2019-00012661-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Reversed and remanded with directions.

Hathaway Parker, Mark M. Hathaway and Jenna E. Parker for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, Hollis R. Peterson, Camille L. Gustafson and Jeffrey P. Michalowski for Defendant and Respondent.

I.

INTRODUCTION

Plaintiff Christopher Teacher filed a complaint seeking a writ of administrative mandate (Code Civ. Proc., § 1094.5)[1] (first cause of action) against California Western School of Law (CWSL) challenging the procedures that CWSL followed in expelling him from the law school.[2] The trial court denied Teacher's request for a writ and entered a judgment in favor of CWSL.[3] Teacher appeals from the judgment. On appeal, he claims that CWSL failed to provide him with a fair administrative process in expelling him, among other contentions.

The contours of the common law right to "fair process" *Doe v. Regents of University of California* (2021) 70 Cal.App.5th 494, 513 (*UC Davis*),[4] in

---

[1]     Unless otherwise specified, all subsequent references are to the Code of Civil Procedure.

[2]     As explained in part II.B.1, *post*, Teacher's complaint contains several related causes of action.

[3]     In both its order denying Teacher's request for a writ of administrative mandate and in its judgment, the trial court treated the first cause of action in Teacher's *complaint* seeking a writ of administrative mandate as a *petition* for writ of administrative mandate. We also treat the first cause of action in Teacher's *complaint* as if it were a *petition* for writ of administrative mandate.

[4]     The *UC Davis* court used the term "*fair* process," to refer to a *private* university student's common law right to a fair disciplinary hearing. (*UC Davis, supra*, 70 Cal.App.5th at p. 513, italics added.) The *UC Davis* court also observed, " 'For practical purposes, common law requirements for a fair disciplinary hearing at a private university mirror the *due* process protections at *public* universities.' " (*Id.* at p. 513, fn. 21, italics added; quoting *Doe v. Allee* (2019) 30 Cal.App.5th 1036, 1061 (*Allee*).)

private university student disciplinary settings is both unsettled and evolving. (See, e.g., *Doe v. Westmont College* (2019) 34 Cal.App.5th 622, 634–635 (*Westmont*) [reviewing case law].)[5] However, one component of the right to fair process is well established, commonsensical, and undisputed: "Where student discipline is at issue, [a] university must comply with its own policies and procedures." (*Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239 (*USC*).)

CWSL violated this principle in expelling Teacher. CWSL's disciplinary procedures expressly provide, "The student or the student's spokesperson shall have the right to cross[-]examine witnesses." Notwithstanding this provision, CWSL did not afford Teacher the opportunity to cross-examine *any* of the witnesses on whose statements CWSL relied in reaching its decision to expel Teacher. In light of the fact that CWSL entirely deprived Teacher of this important right guaranteed by its own procedures, we reverse the judgment, emphasizing that we do not reach any conclusion as to Teacher's commission of the misconduct that CWSL alleges.[6] We remand for further proceedings.[7]

---

[5] Our Supreme Court is currently considering the scope of the right to fair process in *Boermeester v. Carry*, review granted September 16, 2020, S263180.

[6] Teacher also contends that CWSL did not support its determinations as to his alleged misconduct with adequate findings and that CWSL's expulsion decision is not supported by substantial evidence. We do not address these contentions in light of our reversal of the judgment on the ground that CWSL did not provide Teacher with a fair hearing.

[7] In the trial court, CWSL claimed that Teacher's request for a writ of administrative mandate should be denied pursuant to the doctrine of unclean hands, based on misrepresentations in his 2013 application to CWSL. In

3

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The underlying incidents*[8]

    1. *The September 30, 2017 incident*

On September 30, 2017, "a number of emails were sent from [J.E.'s] CWSL student account with explicit sexual, racist or inappropriate content. The [person who sent the e-mails] also printed approximately 200 [plus] pages of study material and other various documents."

    2. *The January 13, 2018 incident*

The Summary describes another incident that occurred on January 13, 2018, in which inappropriate e-mails were sent from the e-mail account of A.F.[9] According to the Summary, A.F. had been using a computer in the "350 building student lounge," on CWSL's campus and thought she had logged off,

---

light of its denial of Teacher's request for a writ on other grounds, the trial court did not rule on CWSL's affirmative defense of unclean hands.

    On remand, as explained in part III.B.1, *post*, the trial court shall consider CWSL's unclean hands affirmative defense. In addition, on remand, after considering CWSL's unclean hands affirmative defense, the trial court shall address the remainder of the causes of action as outlined in part III.B.2, *post*.

[8]     We base our description of the underlying incidents on a one-and one-half page document that CWSL Dean of Students Wendy Bashant created summarizing her investigation into the incidents underlying Teacher's expulsion (Summary). Although the Summary does not indicate who authored it, CWSL states in its brief on appeal that Dean Bashant prepared the Summary.

[9]     Another portion of the administrative record indicates that A.F. is a CWSL student.

4

but "computer records show that she did not log off." The Summary states that various documents were printed from A.F.'s account.

B. *Proceedings at CWSL*

1. *CWSL's Code of Student Professional Conduct*

CWSL has adopted a Code of Student Professional Conduct (CSPC). Article II of the CSPC is titled "Standards of Conduct," and provides:

> "CWSL students are truthful, responsible, and professional toward each other and all other members of the CWSL community. They do not take unfair advantage of each other, nor do they engage in dishonesty, fraud, deceit, theft, misrepresentation or harassment. They also must not violate CWSL's published policies. Students have an obligation to report known violations of this Code and assist in its enforcement."

Article III of the CSPC is titled "Procedures for Enforcement," (Procedures). Section 3 of the Procedures provides for a process of "Informal Administrative Disposition," which may culminate in an administrative sanction of "suspension for no more than one term, with or without conditions."

Section 4 of the Procedures is titled "Formal Professional Responsibility Committee Disposition" and provides in its entirety:

> "The Vice Dean for Academic Affairs, Vice President of Student Life, or the Assistant Dean for Student and Diversity Services may, in his or her discretion, directly refer a case for formal hearing to the Professional Responsibility Committee (PRC). A formal PRC hearing shall also be held if requested by an accused student prior to administrative disposition or within 10 days thereafter. The PRC may dispense with a hearing and informally resolve any matter submitted for formal hearing.
>
> "All hearings shall be at the time and place determined by the PRC. The PRC shall appoint the members of the

5

Hearing Panel, which may include members of the PRC. The Hearing Panel shall review all matters de novo.

"The Vice Dean for Academic Affairs, Vice President of Student Life, the Assistant Dean for Student and Diversity Services, or his or her designee shall present relevant evidence to the Hearing Panel. The accused student has the right to be present, to receive a statement of the charges against him or her, to be personally heard, and to present appropriate evidence and arguments. The accused student may also elect to have a spokesperson present during the hearing. The student or the student's spokesperson shall have the right to cross[ ]examine witnesses. The Hearing Panel shall determine the admissibility of evidence without being bound to rules of evidence and/or procedure."

Section 5 of the Procedures outlines how the Hearing Panel shall resolve matters referred to it and provides, "A majority of the Hearing Panel shall announce its decision and shall prepare a final written report." In addition, if the Hearing Panel finds that the student has violated the "Standards of Conduct," the Hearing Panel shall "state the applicable sanction," including "suspension for more than one term or expulsion from the Law School." Section 5 further provides that any sanctions shall be imposed as follows:

"The Vice Dean for Academic Affairs, Vice President of Student Life, and the Assistant Dean for Student and Diversity Services, in consultation with the Dean, shall impose all sanctions, as determined by the Hearing Panel. A Hearing Panel Report which imposes a sanction shall become part of the sanctioned student's record."

2. *CWSL's letter to Teacher setting a PRC hearing*

The administrative record indicates that CWSL conducted an investigation into the incidents described in the Summary. On February 7,

6

2018, CWSL's Vice Dean of Academic Affairs, Donald Smythe, sent Teacher a letter accusing Teacher of committing the following violations of the CSPC:

> "1. Obtaining unauthorized access to the accounts of two other [CWSL] students, on September 30th[,] 2017 and January 13th, 2018, and using those accounts to send inappropriate emails to a number of faculty and students as well as one alumnus.  These were violations of the CSPC both because of the misrepresentation of the identity of the sender and also because the emails were offensive or abusive in nature.

> "2. On both occasions using those accounts to print a number of items that were then charged to those students.  These were violations of the [CSPC] because they were tantamount to thefts from those other students."

Dean Smythe informed Teacher that a formal PRC hearing would be held to consider the allegations, as follows:

> "Under the Law School's Regulations, the Professional Responsibility Committee needs to hold a hearing to consider those charges (a copy of the CSPC is attached).  The hearing is scheduled for Monday, February 12th, at 4PM in the Boardroom on the 2nd floor of the 225 Building.  It will not be a trial and it will not be similar to a trial.  I do not anticipate that there will be any witnesses or other persons who will be present to provide additional information.  All of the other information to be considered is in the form of emails and computer logs.  You have previously had an opportunity to see those documents and may review them before the scheduled meeting.  They are being held at the front desk of the Vice Dean's office.  Under the Regulations,[10] you are entitled to bring a spokesperson to the hearing if you wish to do so.

10    It appears that Dean Smythe's references to the "Law School's Regulations," and the "Regulations," in his letter were references to the CSPC.  Apart from the CSPC, there are no other law school regulations contained in the administrative record or referred to by the parties.

"If you have any questions about the charges against you or the hearing, please address them to Dean Bashant."

3. *The hearing*

On February 12, 2018, a Panel of the Professional Responsibility Committee (Panel) held a hearing to consider the matter.[11] There is no verbatim transcript of the hearing. The administrative record contains notes (Notes) summarizing the hearing.[12]

The Notes state that at the outset of the hearing Dean Bashant indicated that that "Panel has reviewed the packet of info." Neither the Notes nor any other document in the administrative record indicates what documents were contained in the packet. However, the Notes indicate that the hearing consisted of a discussion among the Panel members, Teacher, and Dean Bashant about the incidents, apparently based on documents contained in the administrative record.[13]

The administrative record includes the following documents:

1. Copies of e-mails allegedly sent during the incidents;

2. Copies of e-mails pertaining to the scheduling of interviews between Teacher and CWSL administrators during the investigation;

3. Dean Bashant's Summary;

---

[11]    The Panel was comprised of four CWSL professors.

[12]    The Notes indicate that Teacher, Dean Bashant, the four Panel members, and a note taker attended the hearing.

[13]    The Notes are five pages in length.

4. Copies of e-mails allegedly sent during the incidents with annotations apparently written by Dean Bashant;

5. Copies of e-mails sent either to or from Dean Bashant pertaining to her investigation, including e-mails from Teacher;[14]

6. A document with the handwritten words "rough timeline" pertaining to the September 30 incident apparently prepared by Dean Bashant;[15]

7. A security official's January 14, 2018 incident report pertaining to A.F.'s disclosure of the January 13, 2018 incident and a supervisor's review of the security official's incident report;

8. Tables documenting login information for certain CWSL computers on January 13, 2018;[16]

---

[14] Some of these e-mails contain witness statements. For example, there is an e-mail from J.E. to Bashant that states in part: "I do not know how the investigation surrounding my email predicament is progressing, but I wanted to let you know that I as of yet have not received any sort of correspondence back from the CPTeacher email . . . ."

Other e-mails contain summaries of witness statements. For example, an e-mail from Susan Finster, Assistant Dean for Student & Diversity Services, to Dean Smythe and Dean Bashant states in part:

"[J.E.] is here in my office. He has provided the following information:

"Saturday evening, September 30, between 7:00-7:30 p.m. he was in the Student Computer Lab reviewing his CWSL emails and printing outlines. The computer screen went blank and [J.E.] thought he was signed out of his email account. He left around 7:30 p.m."

[15] The document includes a list of alleged "email[s] and printing from hacked account," as well as tables and login information for certain CWSL computers pertaining to the September 30 incident.

9. A table listing documents printed from various CWSL printers on January 13, 2018;

10. A statement from a security guard named Kourtney Brown regarding her observations of individuals on the CWSL campus on the evening of January 13 near the time of the incident;[17]

### 4. *Teacher's posthearing submission*

A few days after the hearing, Teacher requested that CWSL allow him to "provide a written response to the matters discussed and the email evidence presented at the [Panel's hearing]." The Panel granted Teacher's request.

Teacher subsequently sent the Panel an e-mail that stated in relevant part:

"On 1/13/2018 [i]t is highly likely I was in the 350 building to use the bathroom before going to building 290. I do not specifically recollect being in the building but I assume I was to use the bathroom then immediately leaving after doing so."

Together with the e-mail, Teacher submitted a document to the Panel titled "Computer Incident Timeline," that summarized computer login information, information concerning e-mails sent and documents printed from J.E.'s and A.F.'s accounts, and "[p]ossible [t]heor[ies]," as to the identity of the person or persons who sent the e-mails. For each theory, Teacher

---

[16]    Although the table does not contain a date, from the remainder of the administrative record one can infer that the table pertains to January 13, 2018.

[17]    We discuss Ms. Brown's statement in part III.A.3.d, *post*.

proposed a series of questions related to the theory. For example, with respect to the September 30, 2017 incident, Teacher stated:

> "**Possible Theory**
>
> "[J.E.] sent the emails himself and printed the documents himself.
>
> "-Was [user 'Dj'[18]] questioned about who was in the library at the time, and who was in the computer lab with them at the time?
>
> "-What time did [J.E.] claim to leave the computer lab?"

The document that Teacher submitted contained numerous other questions related to this and other theories that Teacher propounded pertaining to the two incidents. Many of the questions are ones that Teacher could have posed during cross-examination of the witnesses on whose statements CWSL relied, if given the opportunity. Teacher also submitted photographs of text messages that he said he had received from one of the students who had allegedly received e-mails sent during the September 30 and January 13 incidents.[19]

---

[18] Within the "rough timeline," document described in part II.B.3, *ante*, is a table that states that an account with a username beginning with the letters "Dj," was logged in to a CWSL computer from 5:30 p.m. until 8:23 p.m. on the evening of the September 30, 2017 incident. The Summary of the evidence indicates that the malicious "printing/emailing" began at 8:48 p.m.

[19] During the Panel hearing, Teacher stated that he had a "falling out," with the other student and suggested that the other student may have been the perpetrator of the incidents in question. Although the texts were not related to the September 30 and January 13 incidents, Teacher submitted the photographs of the texts to support his theory that the other student had the ability and motivation to send the malicious e-mails.

### 5. *The Panel's report*

In late February 2018, the Panel issued its report. In the report, the Panel explained that Teacher had been accused of accessing the accounts of two CWSL students and sending e-mails and printing documents from those accounts without the other students' permission. The Panel also outlined the process that it had followed to determine the truth of these allegations:

> "On February 12, 2018, the [Panel] held a hearing at which Mr. Teacher was present. Dean Bashant provided the [Panel] and Mr. Teacher with documents[20] detailing inappropriate and offensive emails sent on September 30, 2017, between 8:50pm and 9:30pm from the account of [J.E.] (a second-year student) and on January 13, 2018, between 9:00pm and 10:00pm from the account of [A.F.] (a third- year student). In addition[,] a number of documents were printed on both occasions from those students' accounts. Upon learning of the receipt of one or more of the emails from the recipients, both students immediately reported the incidents to the Law School, stating that their accounts had been wrongfully accessed by an unauthorized person. In both cases, the students had been using [CWSL] [c]omputers for some time prior to the emails and printing, but stated that they had left those computers prior to the time the emails were sent. Attached to this memorandum are copies of those emails, with the names and email addresses of the recipients redacted. Mr. Teacher subsequently asked for permission to provide the [Panel] with an additional written statement and copies of text messages he had received from one of the students who had received emails sent during both incidents. The [Panel] granted Mr. Teacher's request and subsequently met again on February 22, 2018, to consider the additional material provided by Mr. Teacher."

---

20    The administrative record does not clearly indicate what "documents" Dean Bashant provided the Panel.

The Panel issued the following findings pertaining to the alleged misconduct:

> "Using the preponderance of the evidence standard, the [Panel] finds that sufficient evidence was presented to conclude that it is more likely than not that Mr. Teacher is responsible for accessing the accounts of Mr. [E.] and [Ms. F.] without authorization, and for using those accounts to send offensive and inappropriate emails and for printing a number of documents."

Finally, the Panel stated that it recommended expulsion given the serious nature of Teacher's violations of the CSPC.

### 6. *Teacher's expulsion*

After the Panel issued its report, Dean Smythe sent Teacher a letter informing him that CWSL had expelled him from the law school. CWSL included a copy of the Panel's report with the letter.

### C. *Proceedings in the trial court*

### 1. *Teacher's complaint*

Teacher filed a complaint challenging his expulsion from CWSL. Teacher's complaint contained four causes of action styled as: writ of administrative mandate (first cause of action); breach of contract (second cause of action); breach of the covenant of good faith and fair dealing (third cause of action); and declaratory relief (fourth cause of action). In his complaint, Teacher contended that CWSL "failed to follow its own internal procedures relating to the disciplinary procedure and breached its agreement with [Teacher]."

In his cause of action seeking a writ of administrative mandate, Teacher alleged that CWSL had denied him a fair process in expelling him, for numerous reasons, including failing to "provide [him with] the

13

opportunity to confront or cross-examine any witnesses against him at the hearing or at any other time."

Teacher also claimed that CWSL's wrongful expulsion supported his causes of action for breach of contract and breach of the covenant of good faith and fair dealing. In his declaratory relief cause of action, Teacher requested a judicial determination that CWSL had failed to provide him with a fair hearing.

2. *CWSL's answer*

CWSL filed an answer to the cause of action for writ of administrative mandate in which it denied having failed to provide Teacher with a fair hearing. CWSL also alleged, as an affirmative defense, that Teacher's claims were barred by the doctrine of unclean hands.

3. *The trial court's stay of the causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief pending a determination of Teacher's request for writ relief*

On the same day that CWSL filed its answer to the cause of action for writ of administrative mandate, the trial court entered a stay of the causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief, pursuant to a stipulation of the parties. The order provided in relevant part, "After the Court rules on the writ, if the case has not been dismissed, [CWSL] will have 30 days to answer the verified [c]omplaint as to the second through fourth causes of action."

4. *Teacher's opening brief in support of his request for a writ of administrative mandate*

Teacher filed an opening brief in the trial court in which he argued that the proceedings by which CWSL expelled him were unfair on numerous

14

grounds, including that CWSL had failed to permit him to cross-examine witnesses as guaranteed by the Procedures.[21]

5. *CWSL's opposition*

CWSL filed an opposition in which it argued that it had provided Teacher with a fair hearing and that it had complied with the Procedures. With respect to Teacher's contention that CWSL had failed to afford him the opportunity to cross-examine witnesses, CWSL argued that Dean Smythe had informed Teacher prior to the disciplinary hearing that the hearing would " 'not be a trial and it will not be similar to a trial.' " CWSL also noted that Dean Smythe informed Teacher that he did not anticipate that any witnesses would be present at the hearing. CWSL then argued:

> "Mr. Teacher did not . . . raise the issue of witness cross-examination at the hearing. [Citation.] Even after the hearing, CWSL provided Mr. Teacher the opportunity to provide additional documents and arguments. Mr. Teacher did so, and the [Panel] considered the additional documents and arguments he submitted. [Citations.] The [Panel] made its determinations based on Mr. Teacher's testimony and the documentary evidence. As such, there were no witnesses to cross-examine."

CWSL also argued that Teacher's request for a writ should be denied pursuant to the doctrine of unclean hands based on Teacher's providing false information on his 2013 application to CWSL.[22] CWSL contended, "Where

_____

[21] Teacher also contended that CWSL's findings that he committed the alleged misconduct are insufficient and not supported by the evidence.

[22] CWSL argued that Teacher made several false representations on his 2013 application. For example, CWSL argued:

> "In his 2013 application, Mr. Teacher responded to the question of whether he had previously applied to California Western School of Law with a '**no**.' However, Mr. Teacher

15

the ultimate issue before the trial court is whether [Teacher] should be permitted to continue his legal education, the Court can and should exercise its discretion to prevent dishonest individuals from entering the legal profession."

In support of its unclean hands defense, CWSL submitted evidence, including a request that the trial court take judicial notice of a legal opinion pertaining to Teacher,[23] and a declaration and accompanying exhibits containing Teacher's 2008 and 2013 applications to CWSL.

6. *Teacher's reply*

Teacher filed a reply brief in which he reiterated the arguments raised in his opening brief, including his contention that CWSL had violated his right to a fair process by denying him the right to cross-examine witnesses. With respect to CWSL's argument that there were "no witnesses . . . available for Teacher to cross-examine at the hearing," Teacher responded, "CWSL misses the whole point of cross-examining witnesses at a hearing, which is to avoid subjecting students to severe disciplinary consequence based solely on circumstantial 'evidence' and inference."

Teacher also claimed that the trial court could not "deny the writ for unclean hands," (boldface and capitalization omitted) arguing in part, "Teacher denies and contests the allegations and demands a fair hearing on the issue . . . ."

---

in fact had previously applied to [CWSL] in 2008 and was denied admission."

[23] The opinion stated that "Teacher was removed from his position [as a transportation security screener] on March 7, 2005, during the applicable two-year trial period, for making sexually explicit comments while on official duty."

Together with his reply, Teacher filed an objection to CWSL's opposition brief, alleging that the brief exceeded the permissible length. Teacher also filed an objection to CWSL's request for judicial notice and evidentiary objections to the declaration and accompanying exhibits that CWSL lodged in support of its unclean hands defense.

7. *The trial court's ruling*

After holding a hearing and issuing a tentative ruling, the trial court entered a final order denying Teacher's request for writ relief.[24] With respect to Teacher's objection to being denied the opportunity to cross-examine witnesses, the trial court ruled as follows:

> "According to the CSPC, at the hearing, the accused student has the right to be present, to receive a statement of the charges against him and to be personally heard and to present appropriate evidence and arguments. The student shall have the right to cross-examine witnesses. With the exception of the right to cross-examine, [CWSL] has complied with its policy and procedure. However, it appears that in this case there were no witnesses as the charges were founded upon computer records, e-mails, [Teacher's] classes and circle of professors and acquaintances. While the security guard could have testified and [Teacher] theoretically could have cross-examined her regarding her verification that [Teacher] was present at the time of one of the unauthorized uses occurred [*sic*], the determination against him was made upon the computer records placing him in the area."

---

[24] Teacher filed an objection to the tentative ruling. The trial court confirmed the Tentative ruling after the hearing.

In its order, the court granted CWSL's request for judicial notice and overruled Teacher's evidentiary objections and his objection to CWSL's request for judicial notice.

17

8. *The judgment*

The trial court entered a judgment in CWSL's favor on all of the causes of action in Teacher's complaint in December 2020.

9. *The appeal*

Teacher filed a timely appeal from the judgment in January 2021.

## III.

## DISCUSSION

A. *CWSL violated Teacher's right to fair process by denying him the right to cross-examine witnesses as guaranteed by the Procedures*

Teacher claims that CWSL failed to provide him with a fair process in expelling him from the law school. Among other arguments in support of this contention,[25] Teacher claims that he "was denied the right to cross-examine any witnesses or accusers, even though such right is guaranteed to accused students under [the Procedures]."

1. *Governing law and standard of review*

a. *Section 1094.5's fair hearing requirement and the applicable standard of review*

Section 1094.5, subdivision (a) provides for the issuance of a writ of administrative mandate, "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." Section 1094.5 subdivision (b) provides in relevant part that "[t]he inquiry in such a case shall extend to . . .

---

[25] We discuss Teacher's other contentions as to CWSL's alleged denial of his right to fair process in part III.A.4, *post*.

18

whether there was a fair trial . . . ."  " ' "[A] ' "fair trial" ' means . . . 'a fair administrative hearing.' " ' "  (*Allee, supra*, 30 Cal.App.5th at p. 1059.)

" 'We review the fairness of the administrative proceeding de novo[,] ". . . 'because the ultimate determination of procedural fairness amounts to a question of law." [Citation.]' "  (*Allee, supra*, 30 Cal.App.5th at p. 1059.)

> b.  *The fair hearing requirement in student disciplinary cases*

" 'California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control important economic interests.'  [Citation.] Such a private organization's actions must be both substantively rational and procedurally fair.  [Citation.]"  (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1445; see also *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1722 ["It is now authoritatively established that section 1094.5 will apply to nongovernmental administrative agencies"].)

More specifically, "the provisions of section 1094.5 . . . apply to the case of a student who is subject to university disciplinary proceedings," when the university "provides for an evidentiary hearing."[26]  (*Gupta v. Stanford University* (2004) 124 Cal.App.4th 407, 411; accord *USC, supra*, 246 Cal.App.4th at p. 237, fn. 9 [noting the availability of a writ of administrative mandate under section 1094.5 to review a private university's student disciplinary hearing]; *Allee, supra*, 30 Cal.App.5th at p. 1059 [same].)

---

[26]    The Procedures expressly provide for an evidentiary hearing, stating that CWSL's representatives "shall present relevant evidence to the Hearing Panel," and that the accused student shall have the right "to present appropriate evidence . . . ."

CWSL acknowledges the applicability of section 1094.5 to the review of the Panel's hearing.

"Fair hearing requirements are 'flexible' and entail no 'rigid procedure.' " (*Allee, supra*, 30 Cal.App.5th at p. 1062.) Indeed, "[u]ntil recently, few cases had attempted to define 'fair hearing standards for student discipline at private universities.' " (*Id.* at p. 1061.) However, as outlined in part I, *ante*, one of the principles that is well established, and that CWSL does not dispute, is that a "university must comply with its own policies and procedures," (*USC, supra*, 246 Cal.App.4th at p. 239, citing, *Berman v. Regents of University of California* (2014) 229 Cal.App.4th 1265, 1271 (*Berman*).)[27]

### 2. *CWSL's forfeiture argument*

Before addressing the merits of Teacher's claim, we consider CWSL's contention that Teacher's "failure to object to [the] lack of cross-examination at [the] administrative hearing forfeited this claim on appeal." (Citing *JMS Air Conditioning & Appliance Service, Inc. v. Santa Monica Community College Dist.* (2018) 30 Cal.App.5th 945, 962 & fn. 6 (*JMS Air Conditioning*).)

---

[27] Numerous recent cases have considered the scope of a student's fair hearing rights in the context of alleged *sexual* misconduct. (See *Doe v. Regents of University of California* (2021) 70 Cal.App.5th 521, 534 [reviewing case law].) The "trend in case law has been to expect more adversarial and criminal-trial-like procedures when a student is accused of sexual misconduct and the complainant's credibility is questioned." (*Ibid.*)

CWSL contends that "the jurisprudence on student sexual assault cases is inapposite due to the unique nature of sexual assault inquiries which necessarily come down to the credibility of the witnesses to determine if the alleged incident actually happened in the first place."

We need not determine the applicability of recent case law concerning the fair hearing rights of student's accused of *sexual* misconduct, because it is clear and undisputed that the right to fair process is not limited to sexual misconduct cases. While CWSL maintains that it "complied with its own policies and procedures," (capitalization omitted) CWSL does not dispute that it was required to do so as a component of Teacher's common law right to fair process.

As noted in part II.B.2, *ante*, prior to the disciplinary hearing, CWSL's Dean Smythe sent Teacher a letter on February 7, 2018 informing Teacher that a disciplinary hearing had been scheduled. Dean Smythe characterized the hearing as follows:

> "It will not be a trial and it will not be similar to a trial. I do not anticipate that there will be any witnesses or other persons who will be present to provide additional information. All of the other information[28] to be considered is in the form of emails and computer logs."

Thus, as CWSL notes in its brief, "Dean Smythe's February 7, 2018 letter informed Mr. Teacher that the hearing would consist of going over the emails and computer logs . . . ."

The Notes state that, at the outset of the hearing, Dean Bashant outlined the nature of the proceeding:

> "Dean Bashant (Bashant): Opened the meeting with introductions and stated purpose – provide you opportunity to be heard on evidence we will consider. Not courtroom – no courtroom procedures apply. Questions can be answered by committee or by you."

CWSL also asserted in both the trial court and in this court that Teacher's right to cross-examine witnesses was not abridged because "there were no witnesses to cross-examine."

Given CWSL's unwavering interpretation of the Procedures as affording Teacher the right to cross-examine witnesses only to the extent that CWSL chose to present witnesses at the disciplinary hearing, and its clear

---

28 Although it is not entirely clear what Dean Smythe meant by "other information," it appears that he may have been referring to the copy of the CSPC that he included with his February 7 letter. Dean's Smythe's letter did not refer to any evidence in the case other than e-mails and computer logs.

21

intent not to present any witnesses, any request by Teacher to assert his right to cross-examine would have been futile. Accordingly, we conclude that Teacher has not forfeited his contention that CWSL violated his right to cross-examination by failing to assert his right to cross-examine witnesses at the Panel hearing. (See, e.g., *People v. Zaheer* (2020) 54 Cal.App.5th 326, 337 [forfeiture is excused when an objection would have been futile].)

Even assuming that Teacher had forfeited his right to cross-examine witnesses, "we exercise our discretion to address [Teacher's] argument." (*JMS Air Conditioning, supra*, 30 Cal.App.5th at p. 962.) The record recited above indicates that CWSL affirmatively discouraged Teacher, who represented himself throughout the proceedings at CWSL, from seeking to cross-examine witnesses at the Panel hearing by informing him prior to the hearing that the hearing would "not be a trial and it will not be similar to a trial," and that CWSL did not "anticipate that there will be any witnesses or other persons who will be present to provide additional information." In addition, at the outset of the hearing, Dean Bashant indicated that "no courtroom procedures apply," and that "[q]uestions can be answered by committee or by you."[29] Under these circumstances, we conclude that it is appropriate to consider Teacher's claim on the merits.

---

[29] We quote from the Notes. As discussed in part II.B.3, *ante*, the only record of what transpired at the disciplinary hearing are the Notes. While we do not conclude that the lack of a verbatim transcript necessarily precludes the application of the forfeiture doctrine, the lack of certainty as precisely what was stated at the disciplinary hearing weighs in favor of our decision to exercise our discretion to consider the merits of Teacher's argument.

22

### 3. *CWSL violated Teacher's right to cross-examine witnesses*

#### a. *Principles of interpretation*

Generally, we defer to an agency's interpretation of its own procedures. (*Berman, supra*, 229 Cal.App.4th at p. 1272, citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12 (*Yamaha*).) One "reason we give weight to the agency interpretation of its own policies and procedures is because the agency has developed a level of 'expertise' in light of its familiarity with the legal and regulatory issues." (*Berman, supra*, at p. 1272.)

However, in this case, CWSL does not contend that it has expertise with respect to any legal or regulatory issues that might inform our interpretation of the cross-examination provision in the Procedures. Nor does CWSL suggest that it has previously interpreted the Procedures in any particular manner. Indeed, CWSL does not contend that we should defer to its interpretation of the Procedures, nor does CWSL present any developed legal argument as to the scope and meaning of the right to cross-examine witnesses contained in the Procedures to which we could defer, were we to determine that such deference was appropriate.[30] Under, these circumstances, whatever interpretation CWSL might be said to have of the Procedures does not "merit[ ] any measure of presumptive deference." (*McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 245 [declining to apply *Yamaha* deference where record did not contain evidence of "official

_____

[30] We consider in part III.A.3.d, *post*, CWSL's contention that it did not violate Teacher's right to cross-examine witnesses. While we infer from CWSL's argument that it interprets the Procedures as providing merely for the cross examination of witnesses *who CWSL calls to provide live testimony at a Panel hearing*, CWSL does not offer any legal argument as to why this court should adopt this implied interpretation.

guidance on the agency's construction," of two statutes and party provided no "good reason why [reviewing court] should defer"].)

" 'Generally, the rules that govern interpretation of statutes also govern interpretation of . . . policies promulgated by administrative bodies . . . ." (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 817, citing *Berman, supra*, 229 Cal.App.4th at p. 1271.) Thus, we apply "the general rules of statutory interpretation and construction," to the Procedures. (*Akella, supra*, at p. 817.) We interpret the words in the Procedures by their " ' "plain, commonsense meaning," ' " reading them " ' "as a whole," ' " with the goal of ascertaining the intent of the body that adopted the Procedures.[31] (*Id.* at pp. 817–818.)

        b.   *The Procedures*

As outlined in part II.B.1, *ante*, Article III of the CSPC contains the Procedures. Section 4 of the Procedures provides for a "formal PRC hearing" to be held by a panel of the Professional Review Committee prior to CWSL's imposition of severe sanctions based on a student's misconduct. The Procedures describe the hearing in relevant part as follows:

> "The Vice Dean for Academic Affairs, Vice President of Student Life, the Assistant Dean for Student and Diversity Services, or his or her designee shall present relevant evidence to the Hearing Panel. The accused student has the right to be present, to receive a statement of the charges against him or her, to be personally heard, and to present appropriate evidence and arguments. The accused student may also elect to have a spokesperson present during the hearing. *The student or the student's spokesperson shall have the right to cross[-]examine*

---

[31] Neither the administrative record nor the briefing in this case reveals any information about the adoption of the Procedures or any other extrinsic information concerning their meaning beyond their text.

24

*witnesses.*  The Hearing Panel shall determine the admissibility of evidence without being bound to rules of evidence and/or procedure."  (Italics added.)

c.  *The Procedures generally grant an accused student the right to cross-examine any person on whose statement the Panel relies in reaching its determination*

While CWSL appears to contend that the Procedures provide merely for the right to cross-examine witnesses whom CWSL calls *to provide live testimony at a Panel hearing,* the Procedures contain no language limiting the witnesses whom the student "shall have the right" to cross-examine.  To the extent that CWSL intends to argue that the word "witnesses" in the Procedures refers solely to those individuals whom CWSL elects call to provide live testimony at a Panel hearing, it fails to present any argument as to why the word should be interpreted so narrowly.

Common definitions of the word "witness" reveal that it is *not* used solely to refer to individuals who provide live testimony at a hearing, but rather, includes those who have firsthand knowledge of material facts and whose statements are relied on by the decisionmaker(s).[32]  For example, Black's Law Dictionary defines "witness" as follows:

> "witness *n.* (bef. 12c) 1. Someone who sees, knows, or vouches for something <a witness to a testator's signature>. 2. Someone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit <the witness to the signature signed the affidavit.>. • A witness must be legally competent to testify. — witness, *vb.*
>
> " 'The term "witness," in its strict legal sense, means one who gives evidence in a cause before a court; and in its

---

[32]  The Procedures do not contain a definition of the word "witnesses."

25

> general sense includes all persons from whose lips testimony is extracted to be used in any judicial proceeding, and so includes deponents and affiants as well as persons delivering oral testimony before a court or jury." ' 97 C.J.S. *Witnesses* § 1, at 350 (1957)."

Similarly, Merriam-Webster's online dictionary defines "witness" in relevant part as "one that gives evidence *specifically*: one who testifies in a cause or before a judicial tribunal," (Merriam-Webster Dict. Online (2022) <https://merriam-webster.com/dictionary/witness> [as of April 5, 2022], archived at <https://perma.cc/YLK4-7AKC> [definition "2"]), a*nd* "one who has personal knowledge of something." (*Ibid.* [definition "4"].)

The meaning of "witnesses" as the word is used in the Sixth Amendment also is not limited to those persons who provide live testimony.[33] " '[T]he word "witnesses" in the Sixth Amendment' is defined as ' "those who 'bear testimony.' " ' [Citation.] 'Testimony,' in turn, is a ' " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " ' [Citations.]" (*People v. Blacksher* (2011) 52 Cal.4th 769, 811.) Thus, it is clear that, for purposes of the Sixth Amendment, the term "witnesses" is *not* restricted to those persons whom authorities elect to call to provide live testimony at a criminal trial. (See, e.g., *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 311 [forensic analysts who provided written affidavits reporting the results of their analyses that were admitted in evidence "were 'witnesses' for purposes of the Sixth Amendment"].)[34]

---

[33] The Confrontation Clause of the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the *witnesses* against him." (Italics added.)

[34] We emphasize that we do not conclude that the confrontation right provided in the Sixth Amendment is identical to the right to cross-examine

26

In addition, courts considering fair hearing procedures in the context of student disciplinary proceedings have not used the word "witnesses" to refer solely to persons who provide live testimony. For example, in *Westmont, supra*, the court used the term "witnesses" to refer to persons who had provided statements to investigators concerning a student's alleged misconduct:

> "First, the Panel did not hear testimony from three critical witnesses—K.S., M.H., and M.W.—yet it relied on portions of their statements to corroborate Jane's account or to impeach the credibility of John and his supporting witnesses." (*Westmont, supra*, 34 Cal.App.5th at p. 636.)

Further, to interpret the word "witnesses" in the Procedures to refer solely to those persons who provide live testimony at a CWSL disciplinary hearing would permit CWSL to undermine the very right to cross-examination that it adopted in the Procedures. CWSL points to nothing to support an interpretation of the Procedures that would permit CWSL to condition an accused student's right to cross-examine witnesses on whether CWSL chooses to call such persons to provide live testimony at a PRC hearing. Such an interpretation would allow the school to circumvent the accused student's right to cross-examination by not presenting witnesses and instead, as it did in this case, expel a student based on the statements of witnesses whom the accused student was not given an opportunity to cross-examine.[35]

_____

witnesses under the Procedures. Rather, we point to the Sixth Amendment as an example of an instance in which the word "witnesses" has been determined *not* to have the narrow meaning that CWSL impliedly ascribes to it.

[35] Indeed, as discussed in part III.A.3.d, *post*, contrary to CWSL's assertion that it did not rely on witness statements and that the evidence

27

In interpreting the Procedures' cross-examination provision, we have considered that the Procedures authorize the Panel to "determine the admissibility of evidence without being bound to rules of evidence and/or procedure." However, that provision cannot reasonably be construed to permit the Panel, in adjudicating whether a student is responsible for alleged misconduct, to rely on witness statements that the accused student has had no opportunity to cross-examine. Rather, we must interpret the provision in light of, and in harmony with, the Procedures' guarantee of a student's right to cross-examine witnesses. (See *Akella, supra*, 61 Cal.App.5th at p. 818 [in interpreting a provision of law a court is to interpret law "as a whole"]; accord *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107 ["We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole"].) Statedly differently, we decline to interpret the Panel's authority to determine the admissibility of evidence as a license to eviscerate the right to cross-examination provided in the immediately preceding sentence of the Procedures.

In light of the foregoing, and without purporting to interpret the Procedures with respect to every possible scenario concerning the right to cross-examination that might arise, we conclude that the *Procedures generally grant an accused student the right to cross-examine any person who makes a statement to those investigating the alleged misconduct on which the*

_____

that the Panel considered consisted only of e-mails and computer printouts, it appears that the Panel in fact relied in part on *summaries* of witness statements prepared by Dean Bashant rather than verbatim statements. In addition, in at least one instance, the Panel was presented with a summary of a witness's statement that differed materially from the witness's written statement contained in the record.

28

*Panel relies in reaching its determination.* We say "generally," because we recognize that the Panel may adopt reasonable restrictions with respect to the rule of cross-examination in applying the provision in a particular case (e.g., exceptions based on materiality or unavailability). Further, because we recognize that the Procedures do not authorize a criminal trial (*Doe v. University of Southern California* (2018) 29 Cal.App.5th 1212, 1232), to the extent an out-of-court statement would be admissible at a criminal trial, the Panel would almost certainly be allowed to rely on such a statement in an administrative hearing under the Procedures. However, what CWSL *may not* do is purport to provide an accused student with a right to cross-examination, only to eviscerate that right by holding a hearing without calling *any* witnesses to provide live testimony and adjudging the accused student guilty of misconduct based in part on summaries of witness statements made to those investigating the misconduct.[36]

### d. *CWSL violated Teacher's right to cross-examination as guaranteed by the Procedures*

CWSL contends that it did not violate Teacher's right to cross-examine witnesses as guaranteed by the Procedures. It argues, "In this case, there were no witnesses *at the hearing* to cross-examine." (Italics added.) CWSL also argues, "The [Panel] made its determinations based on Mr. Teacher's testimony and the *documentary evidence*. As such, there were no witnesses to cross-examine." (Italics added.)

For the reasons discussed in part III.A.3.c, *ante*, a student's right to cross-examine witnesses under the Procedures extends to *all* witnesses on whose statements CWSL relies in adjudicating whether the student is

---

[36] As discussed in part III.A.3.d, *post*, that is exactly what occurred in this case.

responsible for the misconduct alleged. Thus, the fact that CWSL did not call any witnesses *at the hearing* in this case does not establish that CWSL did not violate Teacher's right to cross-examine witnesses.

With respect to CWSL's contention that the Panel based its decision solely on Teacher's testimony and "*documentary* evidence," (italics added) it is clear from the record that many of the documents on which the Panel relied are summaries of witness statements made to those charged with investigating the alleged misconduct.

To begin with, the Panel expressly relied on witness' statements made to CWSL's administrators during the investigation.[37] Further, the administrative record includes numerous documents that contain witness statements—or summaries thereof— related to the alleged misconduct, which the Panel appears to have considered.[38] For example, the Summary appears to be based, in part, on statements from J.E. and A.F.[39] The administrative

---

[37] As noted in II.B.5, *ante*, the Panel's findings state:

> "Upon learning of the receipt of one or more of the emails from the recipients, *both students immediately reported the incidents to the Law School, stating that their accounts had been wrongfully accessed by an unauthorized person.* In both cases, the students had been using [CWSL] [c]omputers for some time prior to the emails and printing, but stated that they had left those computers prior to the time the emails were sent." (Italics added.)

[38] CWSL does not contend that any of the documents in the administrative record were *not* before the Panel.

[39] The administrative record also contains an e-mail from Dean Finster to Dean Smythe and Dean Bashant summarizing Dean Finster's interview of J.E. (See fn. 14, *ante*.)

30

record also indicates that Dean Bashant interviewed the student that Teacher suggested at the Panel hearing may have been responsible for the incidents.[40]  In addition, the administrative record includes A.F.'s report of the January 13, 2018 incident to security personnel.

The Summary also contains an arguably materially inaccurate description of one important witness's statement.  The Summary states:

> "Kortney [Brown], the security guard on duty, *identified three students who were in the building at the end of the day*[41]:  an Asian man, a woman, and Mr. Teacher, whom she said that recognizes him [*sic*]:  He is often in the building from 9:30-9:50.  She recognizes him because he has a distinctive gait."  (Italics added.)

However, the administrative record also contains Brown's written statement, in which she states:

> "Captain Miller[42] then asked if I had seen a different CWSL student (Caucasian male) enter the building that night and showed me a picture of an individual.  The individual is very familiar to me as I see him almost every night, usually between 2130 (9:30 PM) – 2155 (9:55 PM).  His walk is very distinctive.  He walks in, heads downstairs, and he's always out of the building before closing.  Often he'll leave in just a couple minutes with a bag of popcorn he's cooked.  *I can't say for certain if I did*

---

[40]    The record contains a printed e-mail from Dean Bashant to the student that states in relevant part, "Thanks for stopping by to see me.  This is a quick check to see if you've had any success retrieving the deleted e-mail."  In handwriting below the printed e-mail are the words "Answer No."

[41]    The Summary indicates that the day in question was January 13, 2018, the date of the second incident at issue.

[42]    Another portion of the administrative record indicates that Captain Miller is a supervising security manager.

*see him Saturday night or what time*, but I do see him here
every weekend when the building is mostly empty and has
low foot traffic." (Italics added.)

In sum, the administrative record unequivocally establishes both that
the Panel relied on various witness statements in determining whether
Teacher was responsible for the misconduct alleged and that Teacher was not
afforded the opportunity to cross-examine these witnesses.

Accordingly, we conclude that CWSL violated Teacher's right to cross-
examine witnesses, as established in the Procedures.

4. *CWSL denied Teacher a fair process in expelling him; CWSL shall
ensure that Teacher is afforded a fair process in any future
disciplinary hearing*

As described in part III.A.3.d, *ante*, the administrative record
establishes that the Panel relied on various witness statements in
adjudicating Teacher's responsibility for the alleged misconduct. CWSL's act
in totally depriving Teacher of the right to cross-examine *any* of these
witnesses plainly violated his right to fair process. (See, e.g., *Ogden
Entertainment Services v. Workers' Comp. Appeals Bd.* (2014) 233
Cal.App.4th 970, 984 ["When, as in this case, a party is completely denied the
fundamental right to cross-examine the adverse party, there has not been a
fair hearing"].)

We are mindful that the "common law requirements for a fair hearing
at a private college . . . are ' "flexible" and entail no "rigid procedure." ' "
(*Westmont, supra*, 34 Cal.App.5th at p. 634.) Thus, CWSL maintains wide
discretion in how it conducts disciplinary hearings, including any future
hearing in this case. However, the disciplinary hearing that CWSL held
leading to Teacher's expulsion failed to comply with its own procedures and
therefore violated a basic principle of fair process. Accordingly, on remand, to

32

the extent that CWSL holds a new hearing with respect to the misconduct at issue in this case (see pt. III.B, *post*), the Panel shall permit Teacher to cross-examine any person on whose statement the Panel relies in determining whether Teacher is responsible for the misconduct.[43]

We have also considered Teacher's additional contentions as to CWSL's denial of his right to fair process and conclude that they are largely without merit.  Specifically, Teacher contends that, "CWSL failed to gather and turn over potentially exculpatory evidence," listing a number of investigatory steps that CWSL *could* have undertaken in determining whether he was responsible for the misconduct alleged.  (Capitalization, boldface and italics omitted.)  While we agree with Teacher that the investigation was far from comprehensive, he fails to demonstrate that any of the shortcomings that he alleges violated the Procedures or his right to fair process.  We also reject Teacher's contention that the Panel "decided that Mr. Teacher was guilty before the hearing even began, shifting the burden to Mr. Teacher to prove his innocence."  While Teacher supports this claim by contending that he was "bombarded by questions and accusations," from Panel members at the hearing, he identifies nothing in the Procedures nor principles of fair process that would preclude such questioning.

Teacher also argues, "CWSL did not afford [him] access to all available evidence prior to the hearing" and "the hearing panel improperly relied on information not presented to Mr. Teacher."  (Some capitalization omitted.)  The law is clear that a university may not base a decision to expel a student on evidence that the university has not disclosed to the student.  (*USC, supra*, 246 Cal.App.4th at p. 247 ["common law requirements for a fair

---

[43]    The Panel may adopt reasonable restrictions with respect to Teacher's right to cross-examination as outlined in part III.A.3.c, *ante*.

hearing under . . . section 1094.5 do not allow an administrative board to rely on evidence that has never been revealed to the accused"; *Doe v. Regents of University of California* (2018) 28 Cal.App.5th 44, 57 ["The accused must be permitted to see the evidence against him. Need we say more?"].) In this case, the informality of the administrative record makes it difficult to determine precisely the documents on which the Panel relied in reaching its expulsion decision, which documents were disclosed to Teacher and when such disclosure occurred.

However, we are able to determine the following: (1) Dean Smythe sent Teacher a letter dated February 7, 2018 stating that a disciplinary hearing would be held to consider his alleged misconduct and that the evidence to be considered at the hearing would be "in the form of emails and computer logs," that Teacher had "previously had an opportunity to see"; (2) notwithstanding Dean Smythe's letter, the Notes unequivocally indicate that, prior to the hearing, Panel members received additional evidence beyond "emails and computer logs";[44] (3) while the Notes state that the "Panel has reviewed the packet of info.," it is unclear what was contained in the packet and whether

---

[44] To take just a few examples, the Notes state as follows:

> "Professor Bohrer (Bohrer): Emails sent to professors did not do well with."

> "Professor Campbell (Campbell): You were working on [Professor] Dizon['s] assignment?"

> "Professor Austin (Austin): . . . My understanding is that you don't know [J.E.] You didn't respond to [J.E.] or inquire about it. Didn't respond to it at all."

There is nothing in the "emails and computer logs," that would have supported the Panel members asking any of these questions. Thus, it is clear that the Panel members considered evidence beyond "e-mails and computer logs" prior to the hearing.

34

Teacher received all of the documents in the packet;[45] (4) the Panel's report recommending expulsion expressly relies on witness statements made to CWSL and it is unclear whether Teacher received the documents containing these statements; (5) the administrative record contains numerous documents that the Panel appears to have relied on, without a clear indication that Teacher received such documents.

Given our reversal of the judgment on the ground that CWSL denied Teacher the right to fair process by violating his right to cross-examination, we need not determine whether Teacher would be entitled to reversal based on CWSL's failure to disclose evidence in the administrative proceedings. However, on remand, to the extent that CWSL holds a new hearing with respect to the misconduct alleged in this case (see pt. III.B, *post*), it shall also ensure that Teacher is timely provided with all of the evidence on which the Panel intends to rely in adjudicating Teacher's case.

In summary, we direct the trial court to ensure that any new hearing that CWSL holds in this matter does not violate Teacher's right to fair process as outlined in this section.

---

[45]   Teacher alleged the following in his complaint:

> "On or about February 8, 2018, [Teacher] spoke with Dean Smythe's senior administrative assistant Donna Kelley regarding the hearing. Kelley told [Teacher] he could come to the Dean's office to review the evidence gathered by CWSL. The next day, on February 9, 2018, [Teacher] went to the Dean's office and spent approximately one hour reviewing the 31 pages of evidence. [Teacher] was not allowed to remove the evidence from the Dean's office or take copies of it for further review."

It is unclear from the administrative record the nature of the "31 pages of evidence," that Teacher was permitted to review.

35

B. *Proceedings on remand*

    1.  *The trial court shall consider CWSL's affirmative defense of unclean hands*

        a.  *Procedural history*

As noted in part II.C.5, *ante*, in the trial court, CWSL argued that the court should deny Teacher's request for writ relief pursuant to the doctrine of unclean hands. In support of this contention, CWSL claimed that Teacher's 2013 application to CWSL contained materially false information. CWSL argued, "Where the ultimate issue before the trial court is whether [Teacher] should be permitted to continue his legal education, the [trial court] can and should exercise its discretion to prevent dishonest individuals from entering the legal profession." CWSL cited case law and offered evidence in support of its contention.

In his reply brief in the trial court, Teacher stated that he "denies and contests the allegations and demands a fair hearing on the issue."

The trial court did not address CWSL's unclean hands defense in its order denying Teacher's request for writ relief.

The parties have not addressed CWSL's affirmative defense in their briefs on appeal.

        b.  *Relevant law*

In *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102 (*Aguayo*), the court outlined the defense of unclean hands:

> "The doctrine of unclean hands . . . rests on the maxim that ' " 'he who comes into equity must come with clean hands.' " ' [Citation.] 'The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.' [Citation.] Whether the doctrine of

36

unclean hands applies is a question of fact." (*Id.* at pp.
1109–1110.)

A reviewing court "review[s] the trial court's decision to apply . . . [an]
unclean hands defense for abuse of discretion," and "review[s] the trial court's
factual findings under the substantial evidence test." (*Aguayo, supra*,
213 Cal.App.4th at p. 1109.)

### c. *Application*

Because the trial court did not consider CWSL's unclean hands defense,
there is no ruling on the defense for this court to review.[46] On remand, the
trial court shall consider CWSL's affirmative defense of unclean hands.[47]

### 2. *Additional further proceedings*

If, after considering CWSL's affirmative defense of unclean hands as
outlined in part III.B.1, *ante*, the trial court denies Teacher's request for a
writ of administrative mandate on the basis of this defense, the trial court
shall issue a new judgment in favor of CWSL on all of the causes of action in
the complaint, including the causes of action for breach of contract (second
cause of action), breach of the covenant of good faith and fair dealing (third
cause of action), and declaratory relief (fourth cause of action).

---

[46] While Teacher erroneously states in his brief in this court that the trial
court entered its final order "without ruling on [Teacher's] objections," as
noted in footnote 24, *ante*, the trial court granted CWSL's request for judicial
notice and overruled Teacher's evidentiary objections and procedural
objection to CWSL's allegedly oversized opposition brief. Further, Teacher
does not raise any substantive arguments on appeal with respect to the trial
court's rulings in this regard.

[47] We express no opinion with respect to the trial court's resolution of
CWSL's unclean hands defense.

37

If, after considering CWSL's affirmative defense of unclean hands as outlined in part III.B.1, *ante*, the trial court concludes that writ relief shall not be denied on basis of this defense, the trial court shall grant the writ of administrative mandate and determine the appropriate relief to award Teacher. Such relief shall include setting aside any sanctions that CWSL imposed as a result of the Panel's February 22, 2018 hearing and permitting CWSL to conduct a new hearing that does not violate Teacher's right to fair process as outlined in part III.A, *ante*. In addition, if the trial court grants Teacher's request for a writ of administrative mandate, the trial court shall also conduct further proceedings with respect to the remaining causes of action.[48]

## IV.

## DISPOSITION

The judgment and the order denying Teacher's request for a writ of administrative mandate are reversed. The matter is remanded to the trial court with directions to consider whether to deny Teacher's first cause of action for writ of administrative mandate based on the affirmative defense of unclean hands as discussed in part III.B.1, *ante* and to conduct further proceedings in the matter in accordance with the directions outlined in part III.B.2, *ante*.

---

[48] As noted in part II.C.3, *ante*, after Teacher filed his complaint, the trial court entered an order pursuant to the parties' stipulation that provides, "After the Court rules on the writ, if the case has not been dismissed, [CWSL] will have 30 days to answer the verified Complaint as to the second through fourth causes of action." Thus, on remand, to the extent that the trial court does not deny the request for a writ on the basis of the unclean hands defense and enter a new judgment in favor of CWSL, the matter shall proceed in accordance with this order.

Teacher is entitled to recover his costs on appeal.

AARON, Acting P. J.

WE CONCUR:

DATO, J.

DO, J.