Filed 12/23/25  Newman v. The Regents of the U. of Cal. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COURTNEY NEWMAN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>     Defendant and Respondent. | B341286<br><br>(Los Angeles County Super. Ct. No. 24STCP01068) |

APPEAL from judgment of the Superior Court of the County of Los Angeles, Richard L. Fruin, Jr., Judge.  Affirmed.

Courtney Newman, in pro. per., Plaintiff and Appellant.

Reed Smith, Raymond A. Cardozo and Corinne Fierro; Stone Dean, Kristi W. Dean and Angela M. Jones for Defendant and Respondent The Regents of the University of California.

Plaintiff and appellant Courtney Newman resigned from her employment at the University of California, Los Angeles (UCLA), but she did not receive her final paycheck until more than a month after her last day of work.  She filed a claim with the California Labor Commissioner, alleging that the delayed payment violated Labor Code, section 202,[1] and because the violation was willful, she was entitled to penalties under section 203 from defendant and appellant the Regents of the University of California (the Regents).  Her claim was denied, and she appealed to the superior court.

At trial, the Regents moved for judgment under Code of Civil Procedure, section 631.8.  The trial granted the motion, finding that the Regents had immunity pursuant to Article IX, Section 9 of the California Constitution.  Newman appeals from the judgment.  We affirm.

## PROCEDURAL BACKGROUND

### A.    Proceedings Before the Labor Commissioner

Newman filed a claim with the Labor Commissioner seeking penalties of $6,576 from the Regents.  A hearing officer denied the claim, finding insufficient evidence of an intentional withholding of Newman's final pay.  Newman appealed the decision to the superior court.

---

[1]      Undesignated statutory references in this opinion are to the Labor Code.

**B.     Proceedings in the Superior Court**

1.     *Pretrial Briefing*

The parties filed pretrial briefs.[2]  Relevant to this appeal, the Regents argued that their constitutional status under Article IX, Section 9 of the California Constitution exempted them from regulation under sections 202 and 203.

Newman alleged the following in her brief.  Newman became a UCLA employee in late 2021.  She submitted a resignation letter to her supervisor on January 22, 2022, and her last day of work was January 28, 2022.  According to Newman, it was management's responsibility to submit her final timesheet because she was a separating employee.  Throughout February 2022, she made inquiries about her final paycheck but was redirected between business units without resolution.  She received her final paycheck in early March 2022.  Newman alleged that the Regents violated section 202, subdivision (a) by failing to pay her on her last day, and because the violation was willful, she alleged her entitlement to 30 days' worth of penalties under section 203.

Newman argued that the Regents' constitutional status did not immunize them from liability under sections 202 and 203 because these sections did not exempt the Regents.  She argued that the timely payment of wages is a matter of statewide

---

[2]     The register of actions indicates that the parties each filed initial pretrial briefs.  Newman then filed an opposition to the Regents' brief, and the Regents filed an objection to Newman's brief and requested sanctions.  The record contains only the initial pretrial briefs, limiting our review to their contents.  (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 ["Failure to provide an adequate record on an issue requires that the issue be resolved against" the appellant].)

3

concern because of the "massive number of employees" employed by the Regents. She urged the trial court to follow an unpublished decision issued by the superior court's appellate division. She argued it held that "'Section 203 falls within the Legislature's police power regulations generally applicable to private persons and corporations for which the [University is] not immune from suit.'"

2.    *Trial*

The matter was called for trial on July 8, 2024. The court acknowledged that a hearing had been held on July 3,[3] after which it issued a tentative ruling that the Regents had constitutional immunity.

The morning of trial, Newman filed a request for judicial notice attaching copies of the unpublished superior court opinion and orders from unrelated Labor Commissioner cases where employees obtained penalty awards against the Regents. The Regents had not seen the request, objected that its late filing prejudiced them, argued that judicial notice of unpublished decisions was improper,[4] and asserted that the Regents could also provide an unpublished case supporting their position if such cases were to be considered. The court indicated it was not inclined to consider unpublished cases from either side. Newman

_____

[3]    The record does not contain a transcript of the earlier hearing.

[4]    The Regents cited *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260 to support their objection. There, our Supreme Court declined to judicially notice several unpublished appellate decisions. "With certain exceptions, not applicable here, the Rules of Court generally prohibit us from noticing unpublished opinions. (Cal. Rules of Court, rule 8.1115(a).)" (*Id.* at p. 269, fn. 2.)

4

then stated for the first time that she was "trying to have [the unpublished superior court case] entered as collateral estoppel."

The trial court invited Newman to make "a statement of what you believe you will prove at trial." She argued that the Regents' immunity arguments were "legally flawed," and section 203 penalizes "all employers who willfully fail to pay wages on time." She also described the facts supporting her claim.

After Newman concluded her opening statement, the Regents moved for judgment under Code of Civil Procedure, section 631.8 on the basis of constitutional immunity. The trial court acknowledged that motions under this section ordinarily are made after the plaintiff rests her case, but it knew "from the briefing that we considered last Wednesday, what the plaintiff is going to say."

The trial court then asked Newman "whether [your] opening statement and the briefs that have been filed thus far would constitute your offer of proof for the remedy that you want against the Regents?" She replied: "Yes, I would argue that there's nothing really outside the scope of what I've already filed in my briefings along with my opening statement, yes."

The trial court adopted its tentative ruling and indicated it would enter a judgment in favor of the Regents. The court then asked whether there was "anything more that should be said?" Newman requested a stay to provide time "to possibly find other remedies that would provide the court more information that would prove that the Regents are actually responsible and are not immune from section 203," but she did not describe the information she wished to present. The trial court declined to stay its ruling.

Judgment was entered for the Regents, and Newman appealed.

## C.     Governing Law

### 1.     *Waiting Time Penalties*

"When an employment relationship comes to an end, the Labor Code requires employers to promptly pay any unpaid wages to the departing employee." (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 105.) "[S]ection 202 specifies the default deadline for paying employees who . . . resign: immediately at the time of quitting, if the employee has given sufficient advance notice, and within 72 hours if the employee has not." (*Ibid.*, citing § 202, subd. (a).) To enforce this deadline, "section 203 prescribes a sanction for employers who 'willfully fail[] to pay' the full amounts due: absent timely payment of 'any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.'" (*Id.* at pp. 105–106, quoting § 203, subd. (a).) "Section 203 penalties for willful delays in the payment of end-of-employment wages are commonly referred to as 'waiting time penalties.' [Citation.]" (*Id.* at p. 106.)

### 2.     *Appeals From Labor Commissioner Decisions*

When an employer fails to pay wages owed to an employee, the employee may seek administrative relief from the Labor Commissioner. (*Villalva v. Bombardier Mass Transit Corp.* (2025) 108 Cal.App.5th 211, 218 (*Villalva*).) If the employee so

6

elects, the Labor Commissioner may hear evidence at what is known as a Berman hearing.  (*Ibid.*; § 98, subd. (a).)

Once a decision has been issued, "either party may 'appeal' the decision to the superior court, which reviews the claim de novo."  (*Villalva, supra*, 108 Cal.App.5th at p. 219; § 98.2, subd. (a).)  "Although denoted as an 'appeal,' the trial de novo 'is neither a conventional appeal nor review of the Labor Commissioner's decision, but is rather a de novo trial of the wage dispute.' [Citation.]"  (*Villalva, supra*, 108 Cal.App.5th at p. 219.)  The decision of the commissioner is entitled to no weight whatsoever, and the proceedings are truly a trial anew in the fullest sense.  (*Ibid.*)

3.  *Motions Under Code of Civil Procedure, Section 631.8*

In a nonjury trial, Code of Civil Procedure, section 631.8 provides a procedure for a defendant, after the plaintiff rests its case, to request entry of judgment in defendant's favor without the requirement of presenting defense evidence.  The motion's purpose is to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.  (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487.)  Motions under section 631.8 may be granted when the defendant is entitled to judgment as a matter of law.  (See, e.g., *Rogers v. Ulrich* (1975) 52 Cal.App.3d 894, 898–899 [granting motion on the basis that statute did not apply]; *Pena v. City of Los Angeles* (1970) 8 Cal.App.3d 257, 260 [statute of limitations].)

A judgment entered under Code of Civil Procedure, section 631.8 is reviewed under the same standards as judgments entered after a completed bench trial:  factual findings are

7

reviewed for substantial evidence and questions of law are reviewed independently. (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424–425.)

## ANALYSIS

### A. Claims of Error

Newman asserts multiple claims of error.[5] First, the trial court erroneously found the Regents are constitutionally immune from liability under section 203. Second, the grant of the Regents' motion for judgment deprived her of a fair trial, where she could have presented evidence of Regent's practice of complying with wage laws. Third, the court erroneously found the Regents to be immune from liability under Government Code, section 818. Fourth, the court failed to consider evidence supporting collateral estoppel.

### B. Constitutional Immunity

#### 1. *Limitations on the Legislature's Power to Regulate The Regents' Affairs*

Article IX, section 9 of the California Constitution provides: "(a) The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds

---

[5] To the extent that she attempts to assert more than the contentions of error we can discern from the headings of her opening brief, we deem such contentions forfeited. (*Petrovich Development Co., LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 976, fn. 9, citing Rule 8.204(a)(1)(B).)

and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services. . . .”

This section “grants the regents broad powers to organize and govern the university and limits the Legislature’s power to regulate either the university or the regents.” (*San Francisco Labor Council v. Regents of Univ. of Cal.* (1980) 26 Cal.3d 785, 788.) The Regents have general rule-making power in regard to the University and are fully empowered with respect to the organization and government of the University. (*Ibid.*) ““[T]he power of the Regents to operate, control, and administer the University is virtually exclusive. [Citations.]’” [Citations.]” (*Ibid.*) “‘[T]he University is intended to operate as independently of the state as possible. [Citation.]’” (*Id.* at p. 789.) Thus, the Regents have “general immunity from legislative regulation.” (*Id.* at p. 788.)

“The Regents, however, are not entirely autonomous.” (*Gomez v. Regents of University of California* (2021) 63 Cal.App.5th 386, 393 (*Gomez*).) “The Legislature may regulate the Regents’ actions in three areas: (1) the Regents cannot compel appropriations for university salaries, because the Legislature is vested with the power of appropriation; (2) statutes that express the state’s general police power, such as workers’ compensation laws, apply to the Regents; and (3) when legislation regulating public agency activity addresses matters of statewide concern not involving internal university affairs, the legislation may be made applicable to the Regents.” (*Campbell v.*

*Regents of University of California* (2005) 35 Cal.4th 311, 321
(*Campbell*).)

Courts have "consistently held the Regents are exempt from statutes regulating the wages and benefits of employees and other workers, including those pertaining to prevailing wages, overtime pay, and indemnification for the cost of work uniforms and maintenance, on the ground those matters are internal affairs of the university that do not come within any of the exceptions to constitutional immunity." (*Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 706 (*Goldbaum*); see also *Gomez, supra*, 63 Cal.App.5th at p. 389 [concerning timekeeping procedures that resulted in former employees being paid less than the minimum wage for all hours worked].)

The trial court found that neither the police power exception nor the statewide concerns exception applied to Newman's claims. On appeal, Newman invokes both of these exceptions.

### 2. *Police Power Exception*

"'The police power is the authority to enact laws to promote the public health, safety, morals and general welfare. [Citation.] Legislation is within the police power if it is reasonably related to a proper legislative goal.' [Citation.]" (*Goldbaum, supra,* at p. 712.) However, it does not follow that "*whenever* a statute is arguably an exercise of the state's broad power to govern, it applies to the Regents." (*Ibid*.) Instead, the "'parochial concern[s]'" of the Regents can be overridden by "'a powerful state interest within the police power of the state *which cannot be effectuated without application to the University . . . .*'" (*Id*. at

10

p. 713.)  "The exercise of police power is subject to 'specific constitutional limitations' [citation] including consideration of the Regents' constitutional immunity."  (*Ibid.*)

In this appeal, Newman offers several arguments why section 203 falls within the police power exception.  She states that the prompt payment of wages upon the discharge of an employee "is a fundamental public policy and indispensable to the public welfare."  She argues that a 2019 amendment to section 204, subdivision (e) indicates the Legislature intended to include the Regents within the state's wage and hour laws.  She also argues that section 220, subdivision (b) (section 220(b)) made section 203 applicable to the Regents.  Finally, she challenges the trial court's reliance on *Goldbaum, supra*, and *Campbell, supra,* 35 Cal.4th 311.  However, she did not articulate all of these arguments before the trial court.

"'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal. . . .' [Citation.]"  (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 (*Nellie Gail*).)  ""'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.'"  [Citation.]"  (*Ibid.*)

11

At the time of trial, Newman's invocation of the police power exception consisted primarily of a request in her pretrial brief, urging the court to follow an unpublished superior court decision that found that section 203 fell within this exception. However, she explained neither the specific facts nor the legal analysis employed in the decision. She was not permitted to cite or rely upon the case as authority, as it was an unpublished opinion of the division of the superior court that hears limited civil appeals. (Cal. Rules of Court, rule 8.1115(a) ["an opinion of a . . . superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"].) At trial, when the Regents moved for judgment, Newman did not raise arguments she makes in this appeal either. We conclude she has largely forfeited these arguments.

Even if not forfeited, Newman's arguments are not sufficient. Appellate courts ordinarily are required to presume that a judgment of the trial court is correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Thus, appellants have the burden of affirmatively demonstrating that the trial court committed an error that justifies reversal of the judgment. (*Id.* at p. 609.) Appellate courts are not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050.)

Newman asserts the Legislature clearly intended for the Regents to be subject to state laws policing the payment of wages. She argues that this intent is shown by the Legislature's 2019

amendment of a different section (§ 204, subd. (e)[6]), when it "specifically name[d] the Regents as an entity subject to wage laws." However, section 204 regulates a different subject (regular paydays) than sections 202 and 203, and Newman fails to show that the modification of section 204 also applied to sections 202 and 203.[7] She does not address why the Legislature would modify section 204 to apply expressly to the Regents but decline to name them similarly in section 202 or 203.

Newman's other points are essentially arguments that the trial court should not have followed *Goldbaum* or misapplied the case. We disagree. In *Goldbaum*, a professor who settled pension-related claims moved for attorney fees and costs under Labor Code, section 218.5, which mandates such an award to the prevailing party in an action for pension benefits. (*Id.* at p. 707.) The Court of Appeal held that the Regents were constitutionally immune from the statute. (*Ibid.*) First, section 218.5 was "silent

---

[6]     Section 204, subdivision (e) provides: "Notwithstanding subdivision (a) of Section 220, all wages earned by employees directly employed by the Regents of the University of California shall be paid on a regular payday. For the employees on a monthly payment schedule, payment is due no later than five days after the close of the monthly payroll period. For employees on a more frequent payment schedule, payment is due according to the pay schedule announced by the University of California in advance. Nothing in this section shall be construed to prohibit the Regents of the University of California from allowing its employees to choose to distribute their pay so that they will receive paychecks throughout the year, rather than during pay periods worked only."

[7]     Newman points us to Senate Bill No. 698, introduced in the 2019–2020 legislative session, which amended section 204, subdivision (e). We find nothing in its legislative history showing the Legislature intended to alter sections 202 and 203.

13

as to the Regents," and there was "no suggestion the Legislature sought to impose the statute on the Regents." (*Id.* at p. 714.) Second, the statute "is not uniformly applied" because it exempts cities, counties, and other local public agencies. (*Ibid.*) This "sweeping exemption of public employers shows the statute may be effectuated without applying it to the Regents." (*Ibid.*) Third, the court considered the "particular capacity in which the Regents are acting." (*Ibid.*) Goldbaum's claim for pension benefits arose from the Regent's status as a public employer and "pertain[ed] to the Regents' internal affairs not subject to state regulation." (*Id.* at p. 715.)

In this case, the appellant fails to persuade us that the trial court misapplied these factors.

(a)     No Mention of the Regents in the Statutes

The Regents are not mentioned in sections 202 or 203. These sections are "silent as to the Regents." (*Goldbaum, supra,* at p. 714.)[8]

(b)     Uniform Application of the Statute

Although sections 202 and 203 do not mention the Regents, Newman argues that these sections were made applicable to the Regents by section 220(b). Section 220(b) provides: "Sections 200 to 211, inclusive, and Sections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed by any

_____

[8]     We do not consider new arguments raised concerning this or other issues in Newman's reply brief. "'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

14

county, incorporated city, or town or other municipal corporation. All other employments are subject to these provisions."

In *Goldbaum*, the court analyzed the implications of section 220(b), which was also applicable to the Labor Code provision in that case, section 218.5. It did not find that section 220(b) made the provision applicable to the Regents. To the contrary, it found: "To any extent [section 218.5] is arguably an exercise of police power as applied to private persons or corporations, its application to the Regents is unjustified as the sweeping exemption of public employers [in section 220(b)] shows the statute may be effectuated without applying it to the Regents." (*Goldbaum, supra,* at p. 714.) Section 220(b) similarly prevents us from concluding that sections 202 and 203 are "uniformly applied." (*Ibid.*)

(c)     Capacity in Which the Regents Were Acting

Lastly, the Regents acted in their capacity as Newman's employer, and her claim arises from the timing and processing of her final paycheck. (*Goldbaum, supra*, at p. 714.) Newman does not persuade us that the administration of this payroll policy is a matter outside the Regents' broad constitutional grant of authority to manage its own internal affairs.

In sum, Newman does not meet her burden of showing the trial court erred in finding the police power exception inapplicable in this case.

3.     *Statewide Concern Exception*

The trial court found that the statewide concern exception did not apply. It held: "In this instance, when a university provides the final paycheck to the employee or the amount of

15

notice an employee is required to give is a matter of internal affairs. Lab. Code §§ 202 and 203 relate to the administrative function of an employment relationship as it relates to how the final payment of an employee is given."

On appeal, Newman argues that wage regulation is "not merely a local administrative issue," and such laws have been found to apply to charter cities. However, she did not make this argument in the trial court, and consequently, has forfeited it. (*Nellie Gail, supra,* 4 Cal.App.5th at p. 997.) In any event, her argument does not persuade us that the trial court erred. The cases she cites in her opening brief in support of applying this exception[9] are unhelpful, as they involved neither the Regents nor the particular constitutional provision at issue.

In sum, appellant has not shown the trial court erred in entering judgment in the Regents' favor based on constitutional immunity.

## C. Newman's Other Claims of Error

### 1. *Improper Grant of Motion for Judgment and Exclusion of Evidence*

Newman argues that the trial court's grant of the Regents' motion under Code of Civil Procedure, section 631.8 denied her due process because it prevented her from presenting testimony, closing argument, and evidence that included the Regents' internal policies "admitting compliance with" sections 202 and 203. She argues that the Regents' admissions were relevant to showing willfulness.

---

[9] *Smith v. Superior Court* (2006) 39 Cal.4th 77; *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325 and *City of Pasadena v. Charleville* (1932) 215 Cal. 384.

"Only prejudicial error results in reversal of a judgment. Error is prejudicial when it is probable that the party against whom it was made would have achieved a better result but for the error." (*Sargent Fletcher, Inc. v. Able Corp. (*2003) 110 Cal.App.4th 1658, 1674 (*Sargent*).) The wrongful exclusion of evidence is not prejudicial to a party when it was "not reasonably probable that a different result would have occurred had the [evidence] been admitted." (*McAllister v. George* (1977) 73 Cal.App.3d 258, 263.)

The trial court's ruling on the Regents' constitutional immunity relieved it from having to decide the merits of Newman's claim, including willfulness. She does not contend that the policies would have altered the immunity analysis. Accordingly, Newman has failed to demonstrate that the effective exclusion of her evidence was prejudicial error. (*Sargent, supra,* 110 Cal.App.4th at p. 1674.)

### 2. *Immunity Under Government Code, section 818*

Newman argues that the trial court erroneously found the Regents to be immune from liability under Government Code, section 818. However, the trial court did not rely on this statute in granting the motion for judgment. Thus, misapplication of section 818 is not a basis for reversal.

### 3. *Collateral Estoppel*

Newman argues the trial court, by granting the motion for judgment, erroneously failed to consider evidence that supported collateral estoppel. She argues that the superior court decision established that the Regents previously "litigated and lost on the issue of their liability under" sections 202 and 203.

17

Newman did not properly assert collateral estoppel in the trial court. Though she cited the unpublished superior court case in her brief and urged the court to follow it, she did not assert any collateral estoppel effect. Her first mention of collateral estoppel was verbally at the start of trial, and she provided no authority or argument.[10] Newman has forfeited this argument. (*Nellie Gail, supra*, 4 Cal.App.5th at p. 997.)

We would conclude, in any event, that the Regents were not collaterally estopped from litigating the issue of constitutional immunity. A judgment rendered by the appellate division in a limited civil case (Code Civ. Proc., § 904.2) "is conclusive between the parties and their successors in interest but does not operate as collateral estoppel of a party or a successor in interest to a party in other litigation with a person who was not a party or a successor in interest to a party to the action in which the judgment or order is rendered." (Code Civ. Proc., § 99.) Nothing in the record indicates that Newman was a party to the superior court case or the successor in interest to a party. Furthermore, "[n]onmutual offensive collateral estoppel is not available against a government entity." (*K.G. v. Meredith* (2012) 204 Cal.App.4th

---

[10] "'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943.) The doctrine applies where (1) "'the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;'" (2) "'this issue must have been actually litigated in the former proceeding;'" (3) "'it must have been necessarily decided in the former proceeding;'" (4) "'the decision in the former proceeding must be final and on the merits;'" and (5) "'the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.'" (*Ibid.*) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Ibid.*)

164, 172, fn. 9, citing *Helene Curtis, Inc. v. Assessment Appeals Bd.* (1999) 76 Cal.App.4th 124, 133.)

## DISPOSITION

The judgment is affirmed. The Regents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.



COLLINS, J.

19